UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ) | |
| JOEL BURSTEIN and ELLI WEINSTEIN, ) | |
| ) | Civil Action № |
| Plaintiffs, ) | |
| ) | |
| vs. ) | JURY TRIAL DEMANDED |
| ) | |
| SUN LIFE ASSURANCE COMPANY OF ) | |
| CANADA (U.S.), ) | **COMPLAINT—CLASS ACTION** |
| ) | |
| Defendant. ) | |
| ) | |

## Introduction

1.      Plaintiffs, Joel Burstein and Elli Weinstein ("Plaintiffs") by their attorneys,

bring this action as a class action for themselves and on behalf of all others similarly sit-

uated, against Defendant Sun Life Assurance Company of Canada (U.S.) ("Sun Life")

for breach of contract, by failing to pay the full death benefit Sun Life guaranteed and

set forth annually in certain life insurance policies. In addition Sun Life is liable to Plain-

tiffs and the Class for Sun Life's unfair or deceptive act or practice, in violation of the

Massachusetts consumer protection act, Mass. General Laws c. 93A, § 1 *et seq*. (the

"Consumer Protection Act"), in misrepresenting pertinent facts concerning the insur-

ance policies at issue, including the benefits thereunder; in failing to effect prompt, fair,

and equitable settlement of death benefit claims for the full amount of the death benefit

specified in such policies; and in compelling Plaintiffs to institute this litigation to re-

1

cover amounts due under their policy by offering substantially less than the amount due thereunder.

## The Parties

2.     Plaintiff Joel Burstein is a citizen of the United States of America and the State of Israel. He resides in Jerusalem, Israel.

3.     Plaintiff Elli Weinstein is a citizen of the Commonwealth of Pennsylvania. She resides in Lower Merion Township, Montgomery County, Pennsylvania, which is within this District.

4.     Defendant Sun Life is a Delaware corporation with its principal place of business located in Wellesley Hills, Massachusetts. Sun Life's website states: "Where it operates: licensed in 49 states (except for the State of New York), the District of Columbia, and Puerto Rico." Sun Life is registered in Pennsylvania with the Pennsylvania Insurance Commissioner as a foreign insurance company conducting insurance business in Pennsylvania.

## Jurisdiction and Venue

5.     The Court has jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (i) Plaintiff Burstein is a citizen of the State of Israel and Plaintiff Weinstein is a citizen of the Commonwealth of Pennsylvania, (ii) Defendant Sun Life is, pursuant to 28 U.S.C. § 1332(c)(1), deemed to be a citizen of the State of Delaware and of the Commonwealth of Massachusetts, and (iii) the amount

in controversy for Plaintiffs and the members of the Class defined below exceeds, on

information and belief, the sum of $5 million, exclusive of interest and costs.

6.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(a)(1), (2),

and (3), and 28 U.S.C. § 1391(c), in that Defendant Sun Life is deemed to reside in this

District, a substantial part of the events or omissions giving rise to the claim occurred in

this District, and Defendant Sun Life is subject to personal jurisdiction in this District as

a life insurance company registered with the Pennsylvania Insurance Commissioner,

who is, on information and belief, Sun Life's true and lawful attorney, upon whom all

lawful processes in any action against it may be served, as provided in 40 Pa. S. § 421(c).

## **Operative Facts**

7.      Plaintiffs are the beneficiaries under a single premium life insurance poli-

cy (the "Policy") issued as of September 13, 1985 by Keystone Provident Life  Insurance

Company ("Keystone"), a corporate predecessor of Sun Life. A true copy of the Policy

as issued (redacted pursuant to Fed.R.Civ.P. 5.2(a)) is attached hereto as Exhibit A and

incorporated herein.

8.      Sun Life assumed all of Keystone's obligations under the Policy.

9.      The Policy is written on Keystone's standard Form No. 751-85A (the

"Form Policy"), the terms of which were determined solely by or on behalf of Keystone

and apply to numerous individuals' insurance policies.

10.     Under the Form Policy the owner is entitled, among other things, to borrow a portion of the cash value in accordance with terms specified in the Form Policy.

11.     Pages 3 and 5 of the Policy and other policies issued on the Form Policy contain individualized information concerning the policy, including (among other things) the cash value of the policy, the amount of the death benefit, and the name of the insured.

12.     In the Policy and other policies issued on the Form Policy, the parties assigned to Keystone the duty to provide annually revised policy pages 3 and 5 to replace those previously in effect.  Specifically, at page 9, the Policy states in part:

> … we will send you new Policy Specifications (Page 3) and a Table of Values (Page 5) on each policy anniversary. These new pages will show policy values based on the loan status of this policy on that date.

13.     By agreeing that it would annually issue new pages 3 and 5 on the respective policy anniversary, Keystone (for itself and its successors, including Sun Life) contemplated an annual revision of each policy issued on the Form Policy.

14.     Since September 13, 1986, Keystone or a successor has annually issued new pages 3 and 5 of the Policy.

15.     On information and belief, Keystone or a successor has annually, on the respective policy anniversary dates, issued new pages 3 and 5 for all other policies issued on the Form Policy commencing with the first policy anniversary date of each.

4

16.     Commencing September 13, 2003, and annually thereafter through September 13, 2010, Sun Life has issued new pages 3 and 5 for the Policy.

17.     On information and belief, commencing in or about 2003, and annually thereafter, Sun Life  has issued new pages 3 and 5 for all other policies issued on the Form Policy.

18.     Each annual issuance of new pages 3 and 5 for all policies issued on the Form Policy, including the Policy, constituted a modification of the respective policy.

19.     The insured under the Policy died on April 13, 2011. Thus, Policy pages 3 and 5 in effect at the time of the insured's death are those dated as of September 13, 2010.

20.     Similarly, with regard to all other policies issued on the Form Policy where the insured has died, the policy pages 3 and 5 in effect at the time of the insured's death are those dated as of the date of the respective insured's death or otherwise the policy anniversary immediately preceding the date of the insured's death.

21.     The Policy (page 9) in part describes the death benefit payable as follows:

> **Death Benefit Payable** – The Guaranteed Death Benefit is shown on Page 5 and is the same amount for all durations.  This amount may change as a new Declared Rate for Unborrowed Cash Value becomes effective on each policy anniversary.  If so, the new amount will be greater than the amount shown on the Page 5 in effect immediately before the anniversary.

22.     The Policy (page 9) further provides that Sun Life "will pay the death benefit to the Beneficiary."

5

23.     As of September 13, 2010, Sun Life issued revised Policy pages 3 and 5 bearing that date, and they are the latest revisions of such pages issued by Sun Life. True copies of the revised Policy pages 3 and 5 issued by Sun Life dated as of September 13, 2010 (redacted pursuant to Fed.R.Civ.P. 5.2(a)) are attached hereto as Exhibit B and incorporated herein.

24.     The Guaranteed Death Benefit payable under the Policy is stated, on Policy Page 5 dated as of September 13, 2010, to be $54,681.

25.     The Form Policy provides on page 9 for annual reporting by Keystone or its successor of certain information as of the policy anniversary ("Anniversary Report"), including among others the Guaranteed Death Benefit and the current loan balance.

26.     In its Anniversary Report as of September 13, 2010, Sun Life reported that the value of the loan under the Policy was $45,636.44. A true copy of Sun Life's Anniversary Report for the Policy as of September 13, 2010 (redacted pursuant to Fed.R.Civ.P. 5.2(a)) is attached hereto as Exhibit C and incorporated herein.

27.     In reliance upon this Anniversary Report, on December 15, 2010, Plaintiff Weinstein paid $46,000 to Sun Life as repayment of the loan under the Policy.

28.     On or about December 21, 2010, Sun Life accepted the $46,000 as repayment of substantially all of the loan under the Policy and reported that following this payment the outstanding loan balance on that date was $630.30. A true copy of Sun Life's letter dated December 21, 2010, acknowledging the payment and reporting the

outstanding loan balance (redacted pursuant to Fed.R.Civ.P. 5.2(a)), is attached hereto as Exhibit D and incorporated herein.

29.     As the beneficiaries under the Policy, Plaintiffs submitted to Sun Life the required claim for the death benefit following the death of the insured on April 13, 2011, and Sun Life accepted the claim.

30.     Only after the death of the insured under the Policy and after Plaintiffs submitted their claim for the death benefit thereunder did Sun Life assert for the first time that it had erroneously reported loan values, Guaranteed Death Benefit, and other values under the Policy, and in reliance upon that assertion, Sun Life did not pay Plaintiffs the death benefit based upon a Guaranteed Death Benefit of $54,681, but instead paid Plaintiffs a total death benefit of only $29,061.14.

31.     By letter to Sun Life dated December 14, 2011 (the "December 14 Letter"), Plaintiff Weinstein, on behalf of both Plaintiffs, demanded payment of the unpaid portion of the death benefit of $25,620.58. Attached hereto as Exhibit E is a true copy (redacted pursuant to Fed.R.Civ.P. 5.2(a)) of Plaintiff Weinstein's December 14 Letter.

32.     Despite Plaintiffs' demand for payment of the full Guaranteed Death Benefit of $54,681, by letter dated January 25, 2012 (the "January 25 Letter"), Sun Life refused to pay more than the $29,061.14 as death benefit under the Policy.  Attached hereto as Exhibit F is a true copy (redacted pursuant to Fed.R.Civ.P. 5.2(a)) of Sun Life's January 25 Letter, addressed to Plaintiff Weinstein with a copy to Plaintiff Burstein.

33.     In its January 25 Letter Sun Life asserted that "the values reported on the Anniversary Reports…were inaccurately reported each year after the September 13, 1993 anniversary…."

34.     The January 25 Letter admitted that Sun Life (and its predecessor) had improperly charged Policy loan interest at a higher rate than the Policy permitted.

35.     "Specifically," the January 25 Letter stated,

> the policy states (1) that we will charge a Loan Interest Rate of 8%, unless the yearly Declared Rate for unborrowed cash value falls to or below a 4.5% policy threshold and (2) that if the Declared Rate for a year falls to or below the 4.5% threshold, we will charge a lower Loan Interest Rate for that year and that the borrowed cash value will grow at the Declared Rate rather than at 8%.

> The Declared Rate for unborrowed cash value has, in fact, been at or below the 4.5% threshold each year since 1993. We did not decrease the Loan Interest Rate to the Declared Rate during the affected time periods; rather, we continued to charge the higher Loan Interest Rate of 8% ….

36.     Sun Life admitted in its January 25 Letter that, as of September 13, 2010, the balance due on the loan on the Policy was actually $20,225.94, not $45,636.44 as Sun Life had stated in the Anniversary Report dated September 13, 2010.

37.     In the January 25 Letter Sun Life falsely asserted that there had been a "2010 correction" and purported to set forth revised values from the "corrected 2010 Anniversary Report."

38.     In fact, prior to the death of the insured on April 13, 2011, Sun Life did not issue any purported correction of any Policy values reported in the September 13, 2010

8

Anniversary Report or in the revised pages 3 and 5 of the Policy issued as of September 13, 2010. Indeed, contrary to Sun Life's assertion that a "corrected 2010 Anniversary Report" had been issued, Sun Life had accepted the full loan payment of $46,000 and stated, in its December 21, 2010 letter to the insured, Exhibit D hereto, both that there remained an additional amount due on the loan as of that date and that Sun Life would provide an update of the policy values on the next policy anniversary, September 13, 2011.

39.     Sun Life made no effort to report or refund the loan overpayment to the owner of the Policy, the payor of the loan overpayment, or any beneficiary under the Policy until June 10, 2011, which was nearly two months after the death of the insured and well after Plaintiffs had submitted their claim as beneficiaries under the Policy.

40.     Because Sun Life misrepresented in the January 25 Letter that the death benefit paid was "accurately calculated under the terms of the policy," Plaintiff Weinstein again wrote Sun Life on behalf of both Plaintiffs in an effort to avoid this litigation by informing Sun Life that "Sun Life's calculation of the death benefit on the above policy is unfair and the letter is deceptive." Attached hereto as Exhibit G is a true copy (redacted pursuant to Fed.R.Civ.P. 5.2(a)) of Plaintiff Weinstein's letter of April 4, 2012, addressed to Sun Life with a copy to Plaintiff Burstein (the "April 4 Letter").

41.     The April 4 Letter was transmitted by Plaintiff Weinstein to Sun Life by both fax and email transmission on April 4, 2012.

42.     In the April 4 Letter, Plaintiff Weinstein referred explicitly to "Massachu-setts' consumer protection law," asserting that Sun Life had violated plaintiffs' "rights as consumers."

43.     Other than an email acknowledgement by Sun Life on April 5, 2012, that it had received the April 4 Letter, Plaintiff Weinstein has not received a response to her April 4 Letter.

## Class Action Allegations

44.     Plaintiffs bring this action for themselves and on behalf of a class (the "Class") defined as:

> All owners of any single premium life insurance policy substantial-ly in the form of Keystone Policy Form No. 751-85A issued or as-sumed by Sun Life Assurance Company of Canada (U.S.) where there was at any time from 1993 through 2011 any policy loan out-standing and where the insured is still living, and all beneficiaries under such a policy where the insured has died.

45.     Excluded from the Class are all officers, directors, employees, and agents of Sun Life or of any of its affiliates, the members of the households of any such indi-viduals, and the beneficiaries under any life insurance policy issued (or assumed) by Sun Life to any of such individuals.

46.     The Class is so numerous that joinder of all members would be impracti-cable.

47.     There are questions of law or fact common to all members of the Class.

48.     Questions of law or fact common to all members of the Class include, among others:

a.      Whether Sun Life reduced the death benefits under the Form Policy as stated in the effective, annually revised policy pages, using offsetting outstanding loan values that were erroneously calculated at 8% instead of the lower rate required by the Form Policy;

b.      Whether Sun Life breached the policies issued on the Form Policy pursuant to which death benefits were paid to Plaintiffs and the members of the Class (the "Class Policies") by deducting an inflated amount as the respective outstanding policy loan value using an erroneous, inflated interest rate of 8% in calculating such values;

c.      Whether Sun Life breached the Class Policies by revising downward any death benefit provided in a previous version of page 5, contrary to the policy covenant that the new amount stated on a subsequent version of page 5 "will be greater than the amount shown on the Page 5 in effect immediately before the anniversary";

d.      Whether Sun Life's use of excessive interest rates improperly inflated loan values which, when deducted from the guaranteed death benefits under the Class Policies, improperly reduced the net death benefits actually paid under the Class Policies;

e.      Whether Sun Life's conduct constituted an unfair or deceptive act or practice by Sun Life in the conduct of its trade or commerce under the Consumer Protection Act;

f.      Whether Plaintiffs and the Class were injured as a result of Sun Life's conduct;

g.      Whether the April 4 Letter constituted the written demand for relief required by the Consumer Protection Act, § 9(3);

h.      The proper measure of damages; and

i.      Whether, and if so to what extent Plaintiffs and the Class are entitled to up to three, but not less than two, times their actual damages, as provided in the Consumer Protection Act § 9(3) due to Sun Life's willful or knowing violation of the Consumer Protection Act § 2 or Sun Life's bad faith refusal of Plaintiffs' demand.

49.     Plaintiffs' claims are typical of the claims of the Class.

50.     Plaintiffs are adequate representatives of the Class in that they have the same interests in recovery as do the Class, and they are represented by counsel who are experienced in bringing and pursuing class-action and other complex litigation.

51.     The questions of law or fact common to the Class predominate over issues affecting only individual Class members.

52.     A class action is superior to other means for resolution of the matter, since the prosecution of individual claims would impose an unnecessary burden on the judiciaries in various jurisdictions and impose a substantial risk that many class members would refrain from pursuing their rights because the amounts involved may not be sufficient to enable them to retain counsel on a contingency, and the costs of individually retained counsel may equal or exceed the individual recovery.

53.     Plaintiffs do not anticipate any extraordinary difficulties in maintaining this action as a class action.

## COUNT ONE
## Breach of Contract

54.     Plaintiffs incorporate herein the averments of ¶¶ 1-53 above.

55.     Plaintiffs assert this Count One for themselves and on behalf of the members of the Class.

56.     The Class Policies are contracts which expressly include the policy pages 3 and 5 as issued on the date of the respective insured's death or otherwise on the respective policy anniversary immediately preceding the death of the insured.

57.     The Class Policies expressly prohibit the reduction of the Guaranteed Death Benefit in any annually issued policy page 5, compared to the Guaranteed Death Benefit stated in policy page 5 effective in the immediately preceding policy year.

58.     Sun Life breached the Class Policies by using an erroneous, inflated interest rate in calculating policy loan values during the period from 1993 through at least 2010.

59.     Sun Life breached the Class Policies by failing to pay the full death benefit based upon the respective guaranteed death benefit stated in the table of values issued as of the date of the respective insured's death or, otherwise, the policy anniversary immediately preceding the death of the insured, reduced only by the respective correct loan values rather than the inflated loan values Sun Life reported during the period from 1993 through at least 2010.

60.     All conditions precedent to this action have been fulfilled or waived.

61.     Plaintiffs and the members of the Class have been injured as a direct consequence of Sun Life's breach of contract, to the extent each was underpaid the death benefit due, together with interest thereon from the date of death of the respective insured.

## COUNT TWO
## Violation of the Consumer Protection Act

62.     Plaintiffs incorporate herein the averments of ¶¶ 1-61 above.

63.     Plaintiffs assert this Count Two for themselves and on behalf of the members of the Class.

64.     Sun Life's intentional failure to pay death benefits to Plaintiffs and the members of the Class in accordance with the Guaranteed Death Benefit set forth on the

policy page 5 in effect at the death of the respective insured — that is, the page 5 as is-

sued on the date of the respective insured's death or otherwise on the respective policy

anniversary immediately preceding the death of the insured — less only the actual, not

inflated loan balance on the policy, is an unfair or deceptive act or practice by Sun Life

in the conduct of its trade or commerce, within the meaning of the Consumer Protection

Act, § 2(a) and of Mass. Gen. Laws c. 176D § 3(9)(f).

65.     The Anniversary Reports issued by Sun Life and by its corporate prede-

cessor or predecessors misrepresented pertinent facts and the benefits under the respec-

tive Class Policies in violation of Mass. Gen. Laws c. 176D § 3(1)(a) and § 3(9)(a), thereby

constituting an unfair or deceptive act or practice, within the meaning of the Consumer

Protection Act, § 2(a).

66.     By its failure to pay the full death benefit stated in the Class Policies at the

time of the respective insured's death, which amounts to an underpayment in the case

of the Policy of more than $25,000, Sun Life has compelled Plaintiffs to institute litiga-

tion to recover the full benefit due them, in violation of Mass. Gen. Laws c. 176D

§ 3(9)(g), which constitutes an unfair or deceptive act or practice, within the meaning of

the Consumer Protection Act, § 2(a).

67.     Plaintiffs and the members of the Class have been injured by Sun Life's

use or employment of such unfair or deceptive acts or practices in that Plaintiffs and

members of the Class have not been paid the full value of the Guaranteed Death Benefit

provided in the applicable policy contract as in force on the respective date of death of the insured.

68.     The April 4 Letter constituted the written demand for relief required by the Consumer Protection Act, § 9(3).

69.     Notwithstanding such demand, and notwithstanding that 30 days have elapsed since the April 4 Letter was sent, Sun Life has failed and refused to pay the full value of Plaintiffs' Guaranteed Death Benefit as provided in the Policy as of the date of the insured's death, including interest thereon.

70.     In connection with such failure and refusal, Sun Life has resorted to additional unfair or deceptive acts or practices, including misrepresenting that a corrected version of the 2010 Anniversary Report under the Policy had ever been issued and by misrepresenting that the death benefit could be revised downward from that stated in a previously issued page 5 of the Policy.

71.     Sun Life has thus willfully and knowingly violated Consumer Protection Act § 2, and Sun Life's refusal was made in bad faith with knowledge or reason to know that its act or practice violated Consumer Protection Act § 2.

72.     Accordingly, Sun Life is liable to Plaintiffs and the members of the Class for up to three times, but not less than two times, their actual damages.

WHEREFORE, Plaintiffs demand judgment against Sun Life as follows:

A.     Determining that this action is brought on behalf of the Class;

B.      Determining and declaring that Sun Life has breached the Class Policies and violated the Consumer Protection Act;

C.      Awarding to Plaintiffs and the Class all damages under Count One arising from Sun Life's breach of contract in failing to pay the death benefit based upon the Guaranteed Death Benefit Sun Life reported in the last annual revised table of values issued before the death of the insured, plus interest thereon from the date of death of the insured;

D.      Awarding to Plaintiffs and the Class up to three times, but not less than two times, their damages under Count Two arising from Sun Life's violation of the Consumer Protection Act;

E.      Awarding to Plaintiffs and the Class prejudgment interest, costs, and reasonable attorneys' fees; and

F.    Awarding to Plaintiffs and the Class such other and further relief as may

be just and proper.

Dated: May 7, 2012

DAVID H. WEINSTEIN (DW1149)
ROBERT S. KITCHENOFF
JEREMY S. SPIEGEL
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
weinstein@wka-law.com
kitchenoff@wka-law.com
spiegel@wka-law.com
215-545-7200

Attorneys for Plaintiffs,
Joel Burstein and Elli Weinstein

EXHIBIT A



# K Keystone Provident Life Insurance Company

## A Stock Company

GILBERT BINDER, CLU
4477 Corporation Lane, Suite 300
Virginia Beach, Virginia 23462
Bus. 490-3883   Res. 423-3633
Tax Deferrals        Estate Planning
Insurance

If the Insured dies while this policy is in force, we will pay the death benefit to the Beneficiary. Before we can pay the death benefit, we must have proof that the Insured died while this policy was in force. We will make such payment subject to the terms of this policy. This page is part of the whole policy.

You may return this policy within 90 days of the Date of Issue or 10 days after you receive it, whichever is later. It can be mailed or delivered to us or to the agent from whom you bought it. The returned policy will be treated as if we never issued it and we will promptly refund your premium, less any existing loans and loan interest due.

This policy is a legal contract between you and us.

## Read This Policy Carefully

Signed for the Company:

_____          _____
Secretary                                    President

## Paid-Up Whole Life Insurance
## Death Benefit Payable Upon the Insured's Death
## Single Premium as Shown on Page 3
## Nonparticipating—No Dividends

# Table of Contents

| | Page |
|---|---|
| Policy Specifications | 3 |
| Table of Values | 5 |
| Definitions | 7 |
| Beneficiary | 7 |
| Date of Issue | 7 |
| Insured | 7 |
| Office | 7 |
| Person | 7 |
| Policy Year, Policy Anniversary | 7 |
| We, Us, Our | 7 |
| Written Request | 7 |
| You, Your | 7 |
| General Provisions | 7 |
| Single Premium | 7 |
| Contract | 7 |
| Modifications and Authority | 8 |
| Ownership | 8 |
| Change of Owner or Beneficiary | 8 |
| Assignment | 8 |
| Incontestability | 8 |
| Non-Participation in Surplus | 8 |
| Suicide Exclusion | 8 |
| Misstatement of Age | 8 |
| Policy Settlement | 8 |
| Discretionary Excess Interest | 8 |
| Change of Plan | 8 |
| Annual Reporting | 9 |
| Death Benefit | 9 |
| Death Benefit Payable | 9 |
| Payment of Death Benefit | 9 |

| | Page |
|---|---|
| Loans | 10 |
| Policy Loans | 10 |
| Policy Loan Interest | 10 |
| Loan Interest Rate | 10 |
| Loan Repayment | 10 |
| Anniversary Cash Value Benefit | 10 |
| Anniversary Cash Value Benefit Based on Unborrowed Cash Value | 10 |
| Anniversary Cash Value Benefit Based on Borrowed Cash Value | 11 |
| Anniversary Cash Value Benefit Based on Single Premium | 11 |
| Nonforfeiture Values | 11 |
| Cash Surrender | 11 |
| Cash Value | 12 |
| Basis of Calculation | 12 |
| Payment Options | 12 |
| Choice and Availability of Payment Options | 12 |
| Death of the Payee | 13 |
| First Payment | 13 |
| Option 1: Income for a Fixed Number of Years | 13 |
| Option 2: Life Income with a Fixed Number of Years Guaranteed | 13 |
| Option 3: Interest Income | 13 |
| Option 4: Income of a Fixed Amount | 13 |
| Tables | 14 |
| Riders and Endorsements are After Page | 14 |

KEYSTONE PROVIDENT LIFE INSURANCE COMPANY
99 HIGH STREET
BOSTON, MA. 02110

POLICY SPECIFICATIONS

INSURED: HAROLD BURSTEIN          POLICY NUMBER: ████9790

ISSUE AGE: 72                     SINGLE PREMIUM:    $10,000.00

DATE OF ISSUE: 09/13/85           PREMIUM CLASS: STANDARD

THE DECLARED RATE FOR UNBORROWED CASH VALUE IS 08.10% PER YEAR FOR THE POLICY
YEAR BEGINNING 09/13/85. AS OF EACH POLICY ANNIVERSARY, WE WILL DECLARE A NEW
RATE FOR ONE MORE POLICY YEAR.

THE ANNIVERSARY CASH VALUE BENEFIT FOR THE NEXT POLICY ANNIVERSARY IS   $547.
PAGE 10 DESCRIBES THIS BENEFIT. THIS AMOUNT WILL CHANGE IF POLICY LOAN
ACTIVITY OCCURS DURING THE YEAR. IN THAT EVENT WE WILL SEND YOU A NEW PAGE 3.

THE BASIC RATE FOR BORROWED CASH VALUE IS 8% AND THE EXCESS RATE IS 4.5%.
PAGE 11 DESCRIBES HOW THESE RATES ARE USED AND HOW THEY MAY CHANGE.

THE PERCENTAGE FOR THE ANNIVERSARY CASH VALUE BENEFIT BASED ON SINGLE PREMIUM
FOR THE NEXT POLICY ANNIVERSARY IS  2%. PAGE 11 DESCRIBES HOW THIS PERCENTAGE
IS USED.

THE BACK OF THIS PAGE IS PAGE 4 AND IS INTENTIONALLY BLANK.

INSURED: HAROLD BURSTEIN                POLICY NUMBER: 9790

VALUES ARE AS OF 09/13/85 AND ARE BASED ON A DECLARED RATE FOR UNBORROWED
CASH VALUE EQUAL TO  08.10% PER YEAR FROM 09/13/85 UNTIL 09/13/86.

## TABLE OF VALUES*

| POLICY ANNIVERSARY | CASH VALUE** | DEATH BENEFIT*** | POLICY ANNIVERSARY | CASH VALUE** | DEATH BENEFIT*** |
|---|---|---|---|---|---|
| 01 | $ 10,161 | $ 13,833 | 15 | $ 12,041 | $ 13,833 |
| 02 | 10,319 | 13,833 | 16 | 12,149 | 13,833 |
| 03 | 10,476 | 13,833 | 17 | 12,257 | 13,833 |
| 04 | 10,630 | 13,833 | 18 | 12,365 | 13,833 |
| 05 | 10,781 | 13,833 | 19 | 12,475 | 13,833 |
| 06 | 10,929 | 13,833 | 20 | 12,587 | 13,833 |
| 07 | 11,072 | 13,833 | 21 | 12,703 | 13,833 |
| 08 | 11,210 | 13,833 | 22 | 12,827 | 13,833 |
| 09 | 11,342 | 13,833 | 23 | 12,961 | 13,833 |
| 10 | 11,469 | 13,833 | 24 | 13,110 | 13,833 |
| 11 | 11,590 | 13,833 | 25 | 13,273 | 13,833 |
| 12 | 11,708 | 13,833 | 26 | 13,434 | 13,833 |
| 13 | 11,822 | 13,833 | 27 | 13,564 | 13,833 |
| 14 | 11,933 | 13,833 | 28 | 13,833 | 13,833 |

\*    THESE VALUES WILL CHANGE IF POLICY LOAN ACTIVITY OCCURS DURING THE YEAR.
IN THAT EVENT WE WILL SEND YOU A NEW PAGE 5.

\*\*   THE GUARANTEED CASH VALUE INCLUDES ANY ANNIVERSARY CASH VALUE BENEFIT
SHOWN ON PAGE 3.

\*\*\*  THE GUARANTEED DEATH BENEFIT INCLUDES A DEATH BENEFIT ASSOCIATED WITH
ANY ANNIVERSARY CASH VALUE BENEFIT SHOWN ON PAGE 3.

THE BACK OF THIS PAGE IS PAGE 6 AND IS INTENTIONALLY BLANK.

# Definitions

**Beneficiary**—The person who will receive any death benefit upon the death of the Insured. The Beneficiary will be: the primary beneficiary if alive on the date of death; otherwise the contingent beneficiary if alive on the date of death; otherwise you or your estate. If you designate more than one person as primary or contingent beneficiary and do not state otherwise, any non-survivors will not receive any benefit and the survivors will receive equal shares. The primary and contingent beneficiaries, if any, are named in the application. They may be changed as provided on Page 8.

**Date of Issue**—The date of receipt of the Single Premium at our Office. This date is shown on Page 3.

**Insured**—The person whose life is covered by this policy. This person is named on Page 3.

**Office**—Either our home office or our executive office. Our home office is in Providence, Rhode Island. Our executive office is shown on Page 3.

**Person**—A human being, a corporation, or any other legally recognized entity. The policy's text assumes that persons are always human beings. However, references that are inappropriate for non-human beings shall be construed in a consistent manner. For example, a reference to the death of a person shall include the dissolution of a corporation.

**Policy Year, Policy Anniversary**—The first policy year starts on the Date of Issue. Future policy years start on the same month and day in each subsequent year (known as the policy anniversary).

**We, Us, Our**—Keystone Provident Life Insurance Company.

**Written Request**—A request written on a form satisfactory to us and filed at our Office.

**You, Your**—The person(s) having all rights under this policy as owner. Initially, this is the primary owner. If the primary owner dies, the owner will be: any contingent owner then alive; otherwise, the primary owner's estate. If more than one person is designated as primary or contingent owner and the designation does not state otherwise, we will treat such persons as joint tenants with right of survivorship. The primary owner and any contingent owner are named in the application. Either may be changed as provided on Page 8.

# General Provisions

**Single Premium**—The Single Premium is due on the Date of Issue of this policy. It must be paid at our Office in United States currency. Coverage under this contract does not take effect until a contract has been issued and the premium paid during the Insured's lifetime. However, if a conditional receipt has been issued, coverage will be effective in accordance with such receipt. The amount of the Single Premium is shown on Page 3.

**Contract**—The entire contract is made up of:

(a) this policy;

(b) the application, a copy of which is attached to this policy; and

(c) all riders and endorsements which are attached to and made a part of this policy.

All statements made in the application, except for fraudulent ones, are representations, not warranties. We may use only those statements contained in the application to void the contract or deny a claim under it.

**Modifications and Authority**—Only our President or our Secretary may agree to:

    (a) change this policy; or

    (b) waive any of the terms of this policy.

We shall not be bound by any promise made by any other person. Any changes must be made in writing and with your consent, except as may be required by applicable law.

**Ownership**—While the Insured is alive, you may exercise all the rights of this policy. You do not need the consent of the Insured or any other person. If you die before the Insured, then your rights will pass:

    (a) to any contingent owner then alive; otherwise

    (b) to your estate.

**Change of Owner or Beneficiary**—While the Insured is alive, you may change by written request the primary owner, contingent owner, primary beneficiary, or contingent beneficiary. An irrevocably-named person may be changed only with the written consent of such person. After we record your request, the change will take effect as of the date you signed the request. The change will not affect any payments we make or actions we take before we record your request.

**Assignment**—You may assign this policy at any time while the Insured is alive. A copy of any assignment must be filed with us. We are not responsible for the validity of any assignment. If you assign this policy, your rights and those of any revocably-named person will be subject to the assignment. An assignment will not affect any payments we make or actions we take before we record it. Any assignment of this policy will be subject to any existing loans.

**Incontestability**—We will not contest this policy after it has been in force, during the Insured's lifetime, for two years from its Date of Issue.

**Non-Participation in Surplus**—We will not pay any dividends on this policy.

**Suicide Exclusion**—If the Insured commits suicide, while sane or insane, within two years from the Date of Issue, our death benefit payment will be limited to:

    (a) the greater of the amount of the Single Premium or the Cash Value; less

    (b) any existing loans ; less

    (c) a pro rata portion of any loan interest due on the next policy anniversary.

**Misstatement of Age**—If the Insured's age has not been stated correctly, we will change any amount payable to what the premium paid would have bought at the right age.

**Policy Settlement**—All amounts payable under this policy are payable:

    (a) at our Office; and

    (b) in United States currency.

Any premium in default will be deducted from any amount payable.

**Discretionary Excess Interest**—On any policy anniversary we may credit excess interest to this policy. The amount and method of crediting excess interest will be at our discretion. Any excess interest would be in addition to any Anniversary Cash Value Benefit.

**Change of Plan**—This policy may be changed as to its amount of insurance, benefits, plan, or otherwise at any time that it is in force. You and we must mutually agree to any change. Any change will be made subject to:

    (a) any state laws which apply;

(b) proof of insurability satisfactory to us; and

(c) payment of any charge or credit which we may determine.

We may from time to time offer you an alternative set of Policy Specifications and a new Table of Values. Any such offer will be:

(a) on the same basis for all insureds of the same classification whose policies have been in force for the same length of time; and

(b) without regard to any change in the Insured's health or occupation since the Date of Issue.

Any offer will state the period of time in which you may accept it. This policy will not change unless you notify us in time that you want the alternative option.

**Annual Reporting**—We will send you a statement on each policy anniversary that shows the current Guaranteed Death Benefit, Guaranteed Cash Value, Declared Rate for Unborrowed Cash Value, Loan Interest Rate, and loan balance.

Also, we will send you new Policy Specifications (Page 3) and a Table of Values (Page 5) on each policy anniversary. These new pages will show policy values based on the loan status of this policy on that date.

# Death Benefit

**Death Benefit Payable**—The Guaranteed Death Benefit is shown on Page 5 and is the same amount for all durations. This amount may change as a new Declared Rate for Unborrowed Cash Value becomes effective on each policy anniversary. If so, the new amount will be greater than the amount shown on the Page 5 in effect immediately before the anniversary. The level amount may also change if any policy loan activity occurs.

If the Insured dies while this policy is in force, we will pay a death benefit equal to:

(a) the Guaranteed Death Benefit; less

(b) any existing loans; less

(c) a pro rata portion of any loan interest due on the policy anniversary after the date of death.

**Payment of Death Benefit**—Before we pay the death benefit, we will require:

(a) proof of the death of the Insured; and

(b) the return of this policy.

Proof of death shall be:

(a) a certified death certificate;

(b) a certified decree of a court of competent jurisdiction as to the finding of death;

(c) a written statement by a medical doctor who attended the deceased; or

(d) any other proof satisfactory to us.

We will pay the death benefit to the Beneficiary. It will be paid in accordance with any applicable laws governing the payment of death proceeds.

# Loans

**Policy Loans**—We will grant you a loan on this policy if you properly assign it to us by a written request. You may borrow any amount less than or equal to:

(a) the Cash Value on the next policy anniversary; less

(b) any Anniversary Cash Value Benefit due on that same policy anniversary; less

(c) any existing loans; less

(d) any loan interest due on that same policy anniversary for any proposed loan and all existing loans.

We may defer granting a loan for up to six months unless the loan proceeds will be used to pay the premium due under a policy of yours that was issued by us. The six-month period begins on the date we receive your loan request at our Office.

**Policy Loan Interest**—Interest on any existing loan is due on each policy anniversary.

If you do not pay the interest when due we will add such interest to the loan balance.

The existing loans plus a pro rata portion of the loan interest due on the next policy anniversary may not at any time exceed the Cash Value. Should this occur, this policy will lapse. However, it will not lapse until 30 days after we send a notice to you at your last known address. We will also send a notice to any assignee of record.

**Loan Interest Rate**—The Loan Interest Rate is 8%. However, for any policy year for which the Declared Rate for Unborrowed Cash Value is less than or equal to 4%, the Loan Interest Rate for that year will be lower. It will be equal to or greater than the Declared Rate, but not more than 1.5% greater. The exact rate will be in your annual report.

**Loan Repayment**—If this policy is still in force, you may pay off in whole or in part any existing loans. In order to pay off all existing loans, you must also pay a pro rata portion of the loan interest due on the next policy anniversary.

# Anniversary Cash Value Benefit

We may credit an Anniversary Cash Value Benefit to this policy on any anniversary. This benefit will be equal to the sum of the following:

(a) the Anniversary Cash Value Benefit Based on Unborrowed Cash Value;

(b) the Anniversary Cash Value Benefit Based on Borrowed Cash Value; and

(c) the Anniversary Cash Value Benefit Based on Single Premium.

**Anniversary Cash Value Benefit Based on Unborrowed Cash Value**—For any policy year for which the Declared Rate for Unborrowed Cash Value is less than or equal to 4%, this benefit will be zero. For any policy year for which the Declared Rate is greater than 4%, this benefit will be credited. The amount of

this benefit is related to both the amount of Cash Value you do not borrow and the length of time it is unborrowed. When this policy anniversary benefit is added to the amount by which unborrowed Cash Value grows during a policy year, unborrowed Cash Value grows between policy anniversaries at a rate equal to the Declared Rate for Unborrowed Cash Value for such policy year. The Declared Rate is shown on Page 3.

### Anniversary Cash Value Benefit Based on Borrowed Cash Value—For any policy year for which the Declared Rate for Unborrowed Cash Value is less than or equal to 4%, this benefit will be zero. For any policy year for which the Declared Rate is greater than 4%, this benefit may be credited. To calculate this benefit, your borrowed Cash Value is divided into a basic part and an excess part. The basic part consists of that portion that does not exceed:

(a) the Cash Value on the last policy anniversary; less

(b) 88% of the Single Premium.

The excess part is that portion of the borrowed Cash Value, if any, that exceeds the basic part. Both the basic and excess parts grow at 4.5%

during the year. When the anniversary benefit is added at the end of the year, the total rate of growth between anniversaries for each part is equal to the Basic Rate for Borrowed Cash Value and the Excess Rate for Borrowed Cash Value, respectively. If the Rate for either part is 4.5%, the anniversary benefit for that part will be zero and the total growth between anniversaries for that part will be 4.5%.

The current Basic and Excess Rates for Borrowed Cash Value are shown on Page 3. We may prospectively change the Rates on any anniversary to any amount between 4.5% and 8%. The Excess Rate will always be less than or equal to the Basic Rate. We may offer you the choice of retroactively changing one or both Rates during a policy year. If you accept our offer in writing, the new Rate(s) will apply to the entire policy year.

### Anniversary Cash Value Benefit Based on Single Premium—This benefit is equal to a specified percentage of the Single Premium accumulated at the Declared Rates for Unborrowed Cash Value in effect since the Date of Issue. The specified percentage is shown on Page 3. If the percentage is zero, this benefit is zero.

# Nonforfeiture Values

**Cash Surrender**—You may surrender this policy for its Cash Surrender Value by making a written request and returning this policy. The Cash Surrender Value at any time is equal to:

(a) the Cash Value; less

(b) any existing loans; less

(c) a pro rata portion of any loan interest due on the next policy anniversary.

During the first policy year after the 90th day, the Cash Surrender Value will be increased by a partial refund of the expense and mortality charges. The amount of the refund will equal:

(a) 8% of the Single Premium; less

(b) 1% of the Single Premium on the 91st day of the policy year, 4% of the Single Premium on the last day of the year (i.e., the day before the policy anniversary), and an interpolated amount on any other day.

The Cash Surrender Value may be:

    (a) taken in cash; or

    (b) left with us under one or more of the payment options as provided in the "Payment Options" section. Your choice of payment option must be made when you surrender this policy.

Surrendering this policy will cancel it. We may delay payment of the Cash Surrender Value for up to six months from the date we receive your request at our Office.

**Cash Value**—The Cash Value of this policy on each policy anniversary is shown on Page 5. The Cash Value at any time between policy anniversaries is equal to:

    (a) the Guaranteed Cash Value on the last policy anniversary; plus

    (b) a pro rata portion of (i) multiplied times (ii) where:

        (i) is the Guaranteed Cash Value on that same anniversary; and

        (ii) is the lesser of 4% or the Declared Rate for Unborrowed Cash Value.

During the first policy year, the Guaranteed Cash Value used in (a) and (b)(i) above equals 92% of the Single Premium. The rate defined in (b)(ii) above is the rate at which either unborrowed or borrowed Cash Value grows during a policy year.

The Cash Values shown on Page 5 may change as a new Declared Rate for Unborrowed Cash Value becomes effective on each policy anniversary. If so, the value shown for any duration on the new Page 5 will not be less than the value shown for the same duration on the Page 5 in effect immediately before the anniversary. The Cash Values shown on Page 5 may also change if any policy loan activity occurs.

**Basis of Calculation**— The mortality table and interest rate basis for calculating Cash Values is the Commissioners' 1958 Standard Ordinary Mortality Table at 4%. We have filed a detailed statement of the method of calculation of the Cash Values with the insurance supervisory official of the jurisdiction where this policy was delivered. All Cash Values are greater than or equal to the minimum cash values required by the jurisdiction where this policy was delivered.

# Payment Options

**Choice and Availability of Payment Options**—Any amount payable under this policy, of at least $5,000, may be received under a payment option. You may choose or change a payment option at any time while the Insured is alive.

If, when the Insured dies, you have not made a choice, a person receiving policy proceeds may then choose a payment option. Any choice or change must be made by a written request. After we record the choice or change, it will take effect as of the date the request was signed. The change will not affect any payments or actions we take before we record it.

The payment options are:

Option 1. Income for a fixed number of years;

Option 2. Life income with a fixed number of years guaranteed;

Option 3. Interest income; and

Option 4. Income of a fixed amount.

Other payment options may be arranged by mutual agreement.

The person who will receive the sum payable under a payment option will be called the payee. The payee shall turn in this policy to us. We will then give the payee a new contract for the payment option chosen.

Our consent is needed to choose an option if:

(a) the payee is not a human being; or

(b) this policy is assigned to anyone other than to us.

The smallest payment we will make under an option is $30. To the extent allowed by law, the amount held and the payments made by us shall not be subject to the claims of the payee's creditors.

**Death of the Payee**—When the payee dies, we will pay, in one sum, to the payee's estate:

(a) the balance of the amount payable still with us under Options 3 and 4; and

(b) the commuted value of any payments not yet made during the fixed period under Options 1 and 2. This value is based on

interest at a rate of 2.5% per year, compounded annually.

**First Payment**—We will make the first payment under Options 1, 2, and 4 as of the date the policy proceeds were payable.

**Option 1: Income for a Fixed Number of Years**—We will pay equal payments for a chosen number of years, not over 30. Each payment will be at least equal to the amount shown in Table 1.

**Option 2: Life Income with a Fixed Number of Years Guaranteed**—We will pay an income once each month for as long as the payee lives. Payments are guaranteed for at least the number of months chosen even if the payee dies before then. The amount of each payment will depend on the payee's sex and age before the payments start. Each payment will be at least equal to the amount shown in Table 2.

**Option 3: Interest Income**—We will pay interest on the amount left with us at a rate of at least 2.5% per year, compounded annually, for a chosen number of years, not over 30. We will make the interest payments annually, semi-annually, quarterly or monthly, as chosen. We will make the first payment at the end of the first payment interval.

**Option 4: Income of a Fixed Amount**—We will make payments of a specified amount. We will credit interest on the balance of the amount payable left with us. This interest will be at a rate of at least 2.5% per year, compounded annually. Payments will last until the amount payable, plus interest, runs out.

**TABLE 1: MINIMUM PAYMENTS PAYABLE UNDER OPTION 1 FOR EACH $1000 LEFT WITH US**

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | | $503.09 | $252.32 | $84.28 | 6 | 177.12 | 89.11 | 44.89 | 14.93 | 15 | 78.80 | 39.64 | 19.88 | 6.64 |
| 2 | $506.17 | 254.85 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 138.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

**TABLE 2: MINIMUM MONTHLY PAYMENT PAYABLE UNDER OPTION 2 FOR EACH $1000 LEFT WITH US**

| Age Male | Female | 60 | 120 | 180 | 240 | Age Male | Female | 60 | 120 | 180 | 240 | Age Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $ 6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.76 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.06 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

* Also applies to younger ages.



# Keystone Provident Life
## Insurance Company

### CASH VALUE ACCUMULATION TEST
### ENDORSEMENT

We have issued this endorsement as part of the policy to which it is attached as of the Date of Issue.

The "Death Benefit Payable" section is amended to include:

> In accordance with the cash value accumulation test of Section 7702(b) of the Internal Revenue Code (as amended as of the Date of Issue), the death benefits payable (before any deduction is made for any loans) at all durations will be large enough so that at any time the actuarial amount (known as the net single premium) used by us to fund such death benefits will not be less than the Cash Value at such time.

The "Basis of Calculation" section is amended to include the following after the first sentence:

> If the premium class shown on Page 3 is "special," the probabilities of death in that mortality table are adjusted as follows.  For any probability less than 40%, the adjusted probability factor equals the lesser of:
>
> > (a)  the table's probability multiplied by the number shown on Page 3 for the special premium class; or
> >
> > (b)  40%.
>
> For any probability equal to or greater than 40%, the adjusted probability factor also equals that number.

Signed for the Company: _Le_anne_ E. _Lyons_
                             Secretary

END. 75(8)



# Keystone Provident Life
## Insurance Company

### NONFORFEITURE LAW
### ENDORSEMENT

We have issued this endorsement as part of the policy to which it is attached.

The first paragraph of the "Cash Surrender" section on page 11 is amended to read:

> **CASH SURRENDER** –You may surrender this policy for its Cash Surrender Value by making a written request and returning this policy.  The Cash Surrender Value at any time is equal to:
>
> (a)  the Cash Value; less
>
> (b)  any existing loans against this policy; less
>
> (c)  a pro rata portion of any loan interest due on the next policy anniversary.
>
> If you surrender this policy within 30 days after any policy anniversary, the amount in (a) shall be the greater of the Cash Value on such anniversary or the Cash Value on the date of surrender.

Signed for the Company: _Suzanne E. Lyons_
                        Secretary

END.751A(4)

1. Proposed Insured _HAROLD BURSTEIN_
   _Print Full Name_

2. Date of Birth _2_ / _28_ / _13_  Sex: ☒ Male
   MO    DAY    YR        ☐ Female

3. Place of Birth _RUSSIA_

4. Occupation _RETIRED_

5. Marital Status: ☒ Married  ☐ Single

6. Home Address _1450 MEADS RD._
   _NORFOLK, VA. 23505_

7. Mailing Address _SAME_

8. Home Phone ( _804_ ) _423-3541_
   Work Phone ( _____ )

9. Primary Beneficiary:
   a. Full Name _LILLIAN BURSTEIN_
   b. Address _____
   c. Relationship to Insured _____

10. Contingent Beneficiary:
    a. Full Name _JOEL BURSTEIN, SON + ELLI_
    b. Address _WEINSTEIN, DAUGHTER  EQUALLY_
    _PER STIRPES_
    c. Relationship to Insured _____

11. Ownership: Is the proposed insured to own this
    policy? ☒ Yes  ☐ No
    If no, complete these items for owner:
    a. Full Name _____
    b. Address _____
    c. Relationship to Insured _____

12. Social Security or
    tax ID number of owner _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_

13. Is there to be a joint owner?  ☐ Yes  ☒ No
    If yes, complete these items for joint owner:
    a. Full Name _____
    b. Address _____
    c. Tax ID Number _____
    d. Type· ☐ Joint tenants with right of survivorship
          ☐ Tenants in common

14. Is there to be a contingent owner?  ☐ Yes  ☒ No
    If yes, complete these items for contingent owner:
    a. Full Name _____
    b. Address _____
    c. Tax ID Number _____

15. Plan of Insurance: ☒ MAXI  ☐ INDEX
          ☐ Other _____

16. Has the proposed insured had or been treated for a
    heart attack, stroke, or cancer (other than skin
    cancer) within the past 24 months? ☐ Yes ☒ No

17. Amount of single premium  $ _10,000_
    Conditional receipt amount  $ _10,000_
    (Must be zero if question #16 is "yes" or left blank)
    Date received _9-11-85_

18. Total Life Insurance in Force

| Company | Year of Issue | Amount |
|---|---|---|
| CAPITOL LIFE | | 60,000 |
| METROPOLITAN | | 5,000 |
| PRUDENTIAL | | 42,000 |
| KEYSTONE | | 10,000 |

19. As a result of this application will any life insurance
    or annuity contract be replaced?  ☐ Yes  ☒ No
    If yes, please list:
    _____
    _____
    _____

20. Has any insurance application or policy on the life of the proposed insured ever been declined, postponed
    or modified as to plan, amount or rate? ☐ Yes ☒ No  If yes, provide details:
    _____
    _____
    _____

21. Reserved for Home Office use for corrections and amendments (except in West Virginia).
    _____
    _____
    _____

---

**AGENT'S REPORT — PLEASE PRINT**

1. Agency Name _SMITH/LINCOLN FINANCIAL SERVICES_

2. Agency Address _SUITE 300, 4417 CORPORATION LANE_
   _VIRGINIA BEACH VA 23462_

3. Agency Phone ( _804_ ) _490-3883_

4. Do you have knowledge or reason to believe that
   replacement of existing insurance or annuities may
   be involved?  Yes ☐  No ☒

5. Signature of Agent _Gilbert Binder_

6. Printed Name of Agent _GILBERT BINDER_

7. Agency/Agent Number | 1 | 33 | 18 | 133 | 18 |

530-85

_Do Not Detach This Section_

**CONDITIONAL RECEIPT — STATEMENT OF APPLICANT**

**AND ALL RESPONSES COMPLETELY AND ACCURATELY RECORDED**

1. Do you have a personal doctor or have you been seeing a doctor? ☐ Yes  ☒ No   If yes, complete these items:
   a. Doctor's Name _Portsmouth Naval Hosp Clinic_ b.  Phone Number ( __ ) ____
   c. Address _Portsmouth  Va_ _____ Zip ____
   d. Date and reason last consulted _Routine Physical_  _June 1985_  _Everything OK._
   e. Treatment given or medication prescribed _None_

2. Have you ever been treated for or ever had any known indication of:

|  | Yes | No |
|---|---|---|
| a. Heart attack, chest pain, heart murmur, palpitation, or other heart or blood vessel disorder? | ☐ | ☒ |
| b. Cancer, tumor, cyst, or disorder of lymph glands, skin, or blood? | ☐ | ☒ |
| c. Stroke, paralysis, spinal cord disorder, convulsions, dizziness, or fainting? | ☐ | ☒ |
| d. Emphysema, chronic bronchitis, asthma, or shortness of breath? | ☐ | ☒ |
| e. Persistent hoarseness or cough, blood spitting, lung disorder, or chronic respiratory disorder? | ☐ | ☒ |
| f. Intestinal bleeding, colitis, ulcer, jaundice, or other disorder of the liver, stomach, or intestines? | ☐ | ☒ |
| g. Disorder of the kidney, bladder, prostate or reproductive organs, sugar, albumin, blood or pus in urine? | ☐ | ☒ |
| h. Alcoholism; drug dependency; mental or nervous disorder? | ☐ | ☒ |
| i. High blood pressure? If so, state in #6 date of onset, treatment, last reading, and complications | ☐ | ☒ |
| j. Diabetes? If so, state in #6 date of onset, treatment, degree of control, and complications | ☐ | ☒ |

3. Are you now under medical observation, getting treatment or taking medication? .... ☐ ☒

4. Have you within the past 5 years:
   a. Had any symptom or disorder not listed above? ................... ☐ ☒
   b. Been a patient in a hospital or other medical facility? ............ ☐ ☒
   c. Had surgery or a diagnostic test? ................................ ☐ ☒
   d. Been advised to have a diagnostic test, hospitalization, or surgery that was not completed? ...... ☐ ☒

5. a. Has your weight changed in the past year? ......................... ☐ ☒
   b. What is your height? _6_ ft. ____ in.
   c. What is your weight? _170_ lbs.

6. DETAILS of "Yes" answers. IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS; include diagnoses, dates, duration, and names and addresses of all attending physicians or medical facilities. If more space is needed attach a separate sheet of paper and so state.

_____
_____
_____
_____
_____

I affirm that my answers to the health questionnaire are true and complete to the best of my knowledge and belief.

_9-11-85_
Date

_[signature]_
Signature of Proposed Insured (or parent if minor)

---

## APPLICATION AGREEMENT

In this agreement you shall mean the Company and I shall mean the owner(s):

1. The statements and answers in this application are complete and true to the best of my knowledge and belief. I agree: (a) this application shall be a part of any policy issued; (b) any Part 2 (supplemental medical application) shall also be a part of that policy; and (c) to be bound by all statements signed by the proposed insured on this application and any Part 2.

2. The agent taking this application has no authority to: (a) make or alter any contract; (b) extend credit; or (c) fail to record any information that is provided. No information I give to your agent shall bind you unless it is written in this application. Due to this limitation, I recognize the importance of writing complete answers.

3. You will have no liability under any policy issued as a result of this application unless and until: (a) the policy is delivered to me; and (b) the premium is paid while the health of the insured is as stated, except as provided in any conditional receipt with the same number and date as this application.

4. Except in West Virginia, my acceptance of the policy issued on this application will be approval by me of any correction or addition to this application made by you. The changes will be made in the space provided for "Corrections and Amendments." However, any changes in amount, class of risk, plan of insurance, of benefits shall be agreed to in writing.

| Date | City | State |
|---|---|---|
| 9-11-85 | Norfolk | Va |

_[signature]_
Signature of Soliciting Agent as Witness

_[signature]_
Signature of Applicant-Owner

_____
Signature of Joint Owner (if any)

530-85

---

*Do Not Detach This Section*

**UNDERWRITING AUTHORIZATION**

# Endorsements
To be inserted only by us



**Keystone
Provident
Life** Insurance Company

Providence, Rhode Island

## Paid-Up Whole Life Insurance
### Death Benefit Payable Upon the Insured's Death
### Single Premium as Shown on Page 3
### Nonparticipating—No Dividends

EXHIBIT B

Sun
Life Financial®

## POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| Insured: | HAROLD BURSTEIN | Policy Number: | 9790 |
| Issue Age: | 72 | Single Premium: | $10,000.00 |
| Date of Issue: | 09/13/1985 | Premium Class: | 100 |
| Initial Death Benefit: | $13,832.00 | | |

The declared rate for unborrowed cash value is 2.00% per year for the policy year beginning 09/13/2010. As of each policy anniversary, we will declare a new rate for one more policy year.

The anniversary cash value benefit for the next policy anniversary is $2567.08. Pages 11-12 of your policy contract describe this benefit. This amount will change if policy loan activity occurs during the year. In that event we will send you a new page 3.

The basic rate for borrowed cash value is 8% and the excess rate is 4.5%. Pages 11-12 of your policy contract describe how these rates are used and how they may change.

The percentage for the anniversary cash value benefit based on a single premium for the next policy anniversary is 0%. Page 12 of your policy contract describes how this percentage is used.

·

The back of this page is page 4 and is intentionally blank.
09/13/2010

Page 3

**Sun**
**Life Financial**
Insured: HAROLD BURSTEIN                                              Policy Number: ███████9790

Values are as of 09/13/2010 and are based on a declared rate for unborrowed cash value equal to 2.00% per year from 09/13/2010 to 09/13/2011 and on guaranteed rates for unborrowed cash value for each policy year thereafter equal to 4.0% less the cost of mortality for that policy year.

### Table of Values*

| Policy Anniversary | Guaranteed Cash Value ** | Guaranteed Death Benefit *** | Policy Anniversary | Guaranteed Cash Value ** | Guaranteed Death Benefit *** |
|---|---|---|---|---|---|
| 25 | 49547 | 54681 | 27 | 53619 | 54681 |
| 26 | 53105 | 54681 | 28 | 54681 | 54681 |

* These values will change if policy loan activity occurs during the year. In that event, we will send you a new Page 5.

** The guaranteed cash value includes any anniversary cash value benefit shown on Page 3.

*** The guaranteed death benefit may include a death benefit associated with any anniversary cash value benefit shown on Page 3. See the Death Benefit Payable section on Page 9 of your policy contract for an explanation.

The back of this page is Page 6 and is intentionally blank.

09/13/2010                                                           Page 5

Sun Life Financial     PO Box 9133     Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada (U.S.) and Independence Life and Annuity Company are members of the Sun Life Financial group of companies

EXHIBIT C

**Sun Life Financial***

Keyplan Maxi Anniversary Report
09/13/2010

HAROLD BURSTEIN
15 RAMAT HAGOLAN              9
JERUSALEM    97703
ISRAEL

| Policy Number: | ███████9790 | | Issue Date: 09/13/1985 |
| Insured: | HAROLD BURSTEIN | | Premium:  $10000 |
| Owner(s): | HAROLD BURSTEIN | | |

Values as of 09/13/2010

| | |
|---|---|
| Premium Accumulations as of 09/13/2009: | $46,255.42 |
| plus Interest Earned: | $79.98 |
| plus Credit of Loans: | $3,212.45 |
| Premium Accumulations as of 09/13/2010:  * | $49,547.86 |
| Premium Accumulations less Loans: | $3,911.42 |
| Surrender Value: | $3,911.42 |
| Death Benefit: | $54,681.72 |
| Death Benefit less Loans: | $9,045.28 |
| Loan Balance as of 09/13/2009: | $42,255.97 |
| Charge of Loans: | $3,380.47 |
| Credit of Loans: | $3,212.45 |
| Net cost of Loans: | $168.01 |
| Loan Balance as of 09/13/2010: | $45,636.44 |

The Declared rate for the current policy year is 2.00%. The Declared rate for the last policy year was 2.00%.

* This figure is for illustrative purposes and represents the premium accumulated at the combined rates since issue.

For policy information, please call our Life Products Department toll free at (800) 500-5512.

5/26/11 Charles

claim # CL 214792
ref.

pd 12/15/10
ck # 2227
$ 46,000.00

Sun Life Financial    PO Box 9133    Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada (U.S.) and Independence Life and Annuity Company are members of the Sun Life Financial group of companies

EXHIBIT D

Sun
  Life Financial*

12/21/2010


HAROLD BURSTEIN
15 RAMAT HAGOLAN
JERUSALEM   97703
ISRAEL


Policy Number:        ████9790
Insured:              HAROLD BURSTEIN
Policy Owner:         HAROLD BURSTEIN


Dear HAROLD BURSTEIN:

This letter is to acknowledge that we have received your loan payment of $46,000.00, which
was credited to your policy on 12/21/2010. Your remaining total loan balance as of 12/21/2010
is $  630.30.

You will receive an update of your policy values on your next Anniversary Statement, including
your new loan balance, if any.

If you have any questions or additional service requests, you may contact our office toll free, at
(800) 500-5512.

Sincerely,

Life Products Department

EXHIBIT E

ELLI WEINSTEIN
505 Redleaf Road
Wynnewood, PA  19096

14 December 2011

Sun Life Financial
Life Products Department
Attn: Mr. Charles Hannah
P.O. Box 9133
Wellesley Hills, MA  02481

Re:   Policy №:    ████████9790
      Deceased:   Harold Burstein
      Claim №:    CL-214792

Dear Mr. Hannah,

I am writing in reply to your letter of 1 December 2011. The information stated in
that letter is not responsive to my inquiry and is completely inconsistent with the
policy and other documentation transmitted from Sun Life in the past.

When I called Sun Life, prompting your letter, I requested a complete accounting
from Sun Life for the above policy, not just two bits of loan information in isola-
tion. The numbers in yours of 1 December only relate that the original loan
amount was $9,000.00 on 10 August 1989 and that it was repaid on 21 December
2010 in the amount of $20,336.05. Instead of providing complete transparency of
the determination of both the loan value and the death benefit, as I requested,
your letter conceals the entire calculation.

Here's the problem. The November 18, 2011 check issued to me as my 50% share
of the death benefit was in the amount of only $14,530.57, purporting to reflect a
death benefit of $14,312.41 plus interest of $218.16. This amount is clearly incon-
sistent with Sun Life's report, dated September 13, 2010, showing the death bene-
fit to equal $54,681.72. In the same report, Sun Life reported that the loan balance
as of September 13, 2010 was $45,636.44. (A copy of Sun Life's "Keyplan Maxi
Anniversary Report" of that date is enclosed.)

In reliance upon these representations, my then 97 year old father authorized me
to pay, and I paid, $46,000.00 to Sun Life on 15 December 2010. (A copy of my
check № 2227 in that amount is also enclosed.) As a result of that payment, the

reported death benefit of $54,681.72 was no longer to be reduced by $46,000.00 of any outstanding loan. My father, my brother (Joel Burstein), and I all expected that this payment would free up the full death benefit Sun Life reported. Sun Life accepted my payment, and never disclosed to me that it took more money from me than it was entitled to receive.

*After* my father's death, when Sun Life first had a motive to minimize its obligation under the policy, Mr. Dan Jammal of Sun Life disclosed in his letter of 10 June 2011 that for many years—from 2001 through 2010— Sun Life had significantly overstated the amount of interest it was entitled to charge under the policy. He did not provide, however, any specifics. What is clear is that the false information from Sun Life over the years caused my repayment of the loan in the amount of $46,000.00, not the $20,336.05 stated in your letter of 1 December. Your letter fails to mention the actual amount of this payment, and fails to provide the complete accounting under the policy that I had requested. Even more outrageous, no one from Sun Life has ever disclosed to me that it has been holding my money without any right to do so for the past year!

Because my father and I relied upon Sun Life's repeated, wildly inflated values— culminating in the September 13, 2010 report that the death benefit was $54,681.72 and the loan balance was $45,636.44—Sun Life bound itself to the death benefit it promised when it kept my $46,000.00 payment in silence. Moreover, since Sun Life admits that the actual loan amount was only $20,336.05, I demand repayment to me of the $25,663.95 excess.

In sum, here's the minimum of what I believe is due my brother and me, the two beneficiaries under the policy. First, a complete accounting for how the $20,336.05 loan value was calculated. Second, assuming that calculation is correct, I request payments to my brother and me based on the following calculations:

| | |
|---|---|
| Death benefit as reported by Sun Life: | $54,681.72 |
| Less: payments to date: | -29,061.14 |
| Unpaid portion of death benefit: | $25,620.58 |
| One-half of unpaid portion of death benefit: | $12,810.29 |
| Payment toward the policy loan: | $46,000.00 |
| Less: actual loan as admitted by Sun Life: | -20,336.05 |
| My overpayment: | $25,663.95 |

Sun Life Financial
14 December 2011
Page 3

My brother is entitled to an additional payment of $12,810.29 (half of the unpaid portion of the death benefit), and I am entitled to $38,474.24 (the other half of the unpaid death benefit plus my overpayment of the loan), plus interest on each of these amounts. In the case of the unpaid portion of the death benefit, interest should run from the date of my father's death, 13 April 2011. In the case of the overpayment of the loan balance, interest should run from the date you received it, which was no later than 21 December 2010.

Although Mr. Jammal's letter stated that the overpayment will be made to my father's estate, that amount is actually due to me. As the enclosed copy of my check proves, I am the one that Sun Life, through its false statements, tricked into paying far more than the company was owed. Since I paid it, and Sun Life willingly accepted the payment from me, I am entitled to repayment of the admittedly wrongfully retained excess money.

Very truly yours,

Encls.

cc:    Mr. Joel Burstein (w/encls.)

**Sun Life Financial***

Keyplan Maxi Anniversary Report
09/13/2010

HAROLD BURSTEIN
15 RAMAT HAGOLAN                    9
JERUSALEM    97703
ISRAEL

| Policy Number: | ████████9790 | | Issue Date: 09/13/1985 |
| Insured: | HAROLD BURSTEIN | | Premium:  $10000 |
| Owner(s): | HAROLD BURSTEIN | | |

Values as of 09/13/2010

| | |
|---|---|
| Premium Accumulations as of 09/13/2009: | $46,255.42 |
| plus Interest Earned: | $79.98 |
| plus Credit of Loans: | $3,212.45 |
| Premium Accumulations as of 09/13/2010:  * | $49,547.86 |
| Premium Accumulations less Loans: | $3,911.42 |
| Surrender Value: | $3,911.42 |
| Death Benefit: | $54,681.72 |
| Death Benefit less Loans: | $9,045.28 |
| Loan Balance as of 09/13/2009: | $42,255.97 |
| Charge of Loans: | $3,380.47 |
| Credit of Loans: | $3,212.45 |
| Net cost of Loans: | $168.01 |
| Loan Balance as of 09/13/2010: | $45,636.44 |

The Declared rate for the current policy year is 2.00%. The Declared rate for the last policy year was 2.00%.

* This figure is for illustrative purposes and represents the premium accumulated at the combined rates since issue.

For policy information, please call our Life Products Department toll free at (800) 500-5512.

5/26/11 Charles

claim # CL 214792
ref.

pd 12/15/10
ck # 2227
$ 46,000.00

Sun Life Financial    PO Box 9133    Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada (U.S.) and Independence Life and Annuity Company are members of the Sun Life Financial group of companies

Sun
Life Financial®

## POLICY SPECIFICATIONS

| Insured: | HAROLD BURSTEIN | Policy Number: | ⬛9790 |
| Issue Age: | 72 | Single Premium: | $10,000.00 |
| Date of Issue: | 09/13/1985 | Premium Class: | 100 |
| Initial Death Benefit: | $13,832.00 | | |

The declared rate for unborrowed cash value is 2.00% per year for the policy year beginning 09/13/2010. As of each policy anniversary, we will declare a new rate for one more policy year.

The anniversary cash value benefit for the next policy anniversary is $2567.08. Pages 11-12 of your policy contract describe this benefit. This amount will change if policy loan activity occurs during the year. In that event we will send you a new page 3.

The basic rate for borrowed cash value is 8% and the excess rate is 4.5%. Pages 11-12 of your policy contract describe how these rates are used and how they may change.

The percentage for the anniversary cash value benefit based on a single premium for the next policy anniversary is 0%. Page 12 of your policy contract describes how this percentage is used.

.

The back of this page is page 4 and is intentionally blank.
09/13/2010

Page 3

Sun Life Financial    PO Box 9133    Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada (U.S.) and Independence Life and Annuity Company are members of the Sun Life Financial group of companies

Sun
Life Financial

Insured:  HAROLD BURSTEIN                                              Policy Number: ████████9790

Values are as of 09/13/2010 and are based on a declared rate for unborrowed cash value equal to 2.00% per
year from 09/13/2010 to 09/13/2011 and on guaranteed rates for unborrowed cash value for each policy
year thereafter equal to 4.0% less the cost of mortality for that policy year.

### Table of Values*

| Policy Anniversary | Guaranteed Cash Value ** | Guaranteed Death Benefit *** | Policy Anniversary | Guaranteed Cash Value ** | Guaranteed Death Benefit *** |
|---|---|---|---|---|---|
| 25 | 49547 | 54681 | 27 | 53619 | 54681 |
| 26 | 53105 | 54681 | 28 | 54681 | 54681 |

\* These values will change if policy loan activity occurs during the year.  In that event, we will send you a
new Page 5.

\*\* The guaranteed cash value includes any anniversary cash value benefit shown on Page 3.

\*\*\* The guaranteed death benefit may include a death benefit associated with any anniversary cash value
benefit shown on Page 3. See the Death Benefit Payable section on Page 9 of your policy contract for an
explanation.

The back of this page is Page 6 and is intentionally blank.
09/13/2010                                                                    Page 5

Amount:        $46,000.00
Account:       2560
Bank Number:   05100001

Sequence Number:   770224266
Capture Date:      12/21/2010
Check Number:      2227



**Bank of America Advantage**

**DR. HAROLD BURSTEIN**   2-86
**ELLI WEINSTEIN**
121 BROOME LN.
MERION STATION, PA  19066

2227

58-1/510 VA
1218

Date 12/15/10

Pay to the order of  *Sun Life Financial*   $ 46,000.00

*Forty-six thousand & xx/100* _____ Dollars

**Bank of America**

ACH R/T 051000017

Memo _____ 9790

⑈05100001⑆⑈ 0000   2560⑈ 2227  ⑈0004600000⑆

FOR DEPOSIT ONLY
SUNLIFE ASSURANCE COMPANY
OF CANADA (US)

ENDORSE HERE

EXHIBIT F

Rec'd 1/30/2012

**Sun Life Financial®**

Kathryn A. Donovan
Operations Consultant
Customer Relations

Sun Life Assurance
Company of Canada (U.S.)
P.O. Box 9133
Wellesley Hills, MA 02481-9133
Tel:     (800) 752-7216, ext. 6778
Fax:     (781) 304-5351
*Kathryn.Donovan@sunlife.com*

January 25, 2012

Elli Weinstein
505 Redleaf Road
Wynnewood, PA 19096

RE:    Policy Number       █████9790
       Owner               Harold Burstein
       Insured             Harold Burstein

Dear Ms. Weinstein:

We appreciate your patience while we reviewed the concerns brought to our attention in your December 14, 2011, correspondence. Please be advised that we are prepared to return the loan overpayment of $25,663.95 (with interest) directly to Bank of America account number 94022560. We ask, however, that you confirm this bank account, on which the payment was drawn, is still open. For convenience, you may fax written confirmation to (781) 304-5351

However, we wish to confirm that the death benefit paid to you and your brother, was accurately calculated under the terms of the policy, and no additional amount is due.

Allow us to take this opportunity to provide some additional clarification regarding the adjustments to your father's policy. Specifically, our letter of June 10, 2011, explained that the policy states (1) that we will charge a Loan Interest Rate of 8%, unless the yearly Declared Rate for unborrowed cash value falls to or below a 4.5% policy threshold and (2) that if the Declared Rate for a year falls to or below the 4.5% threshold, we will charge a lower Loan Interest Rate for that year and that the borrowed cash value will grow at the Declared Rate rather than at 8%.

The Declared Rate for unborrowed cash value has, in fact, been at or below the 4.5% threshold each year since 1993. We did not decrease the Loan Interest Rate to the Declared Rate during the affected time periods; rather, we continued to charge the higher Loan Interest Rate of 8% on

Mr. Burstein's loan balance and credited the higher rate to his borrowed cash value as well. Thus, the values reflected on the Anniversary Reports, i.e. Loan Balance, Surrender Value, and Death Benefit, were inaccurately reported each year after the September 13, 1993 anniversary (the Death Benefit values on the September 13, 1993 Anniversary Report were also inaccurately calculated and reported).

Please note that the policy values between the 9/13/1985 issue date and the 9/13/1993 anniversary date (with the exception of the 9/13/1993 Death Benefits noted above) were accurately reported and did not need to be corrected.

The following table shows the values from 9/13/1992 (which were accurately calculated), the values for the 2010 anniversary (9/13/2010) before they were corrected, and the corrected values for that same anniversary.

Sun Life Assurance Company of Canada (U.S.) is a
member of the Sun Life Financial group of companies.

www.sunlife-usa.com

|  | Accurate 9/13/1992 values from 1992 Anniversary Report | Inaccurate 9/13/2010 values from original 2010 Anniversary Report | Accurate 9/13/2010 values from corrected 2010 Anniversary Report |
|---|---|---|---|
| Death Benefit | $20,209.88 | $54,681.72 | $28,778.45 |
| Loan Balance | $11,420.52 | $45,636.44 | $20,225.94 |
| **Net Death Benefit** | **$ 8,789.36** | **$ 9,045.28** | **$ 8,552.51** |
|  |  |  |  |
| Premium Accumulations (i.e., Cash Value) | $15,762.49 | $49,547.86 | $27,401.09 |
| Loan Balance | $11,420.52 | $45,636.44 | $20,225.94 |
| Cash Surrender Value | $ 3,866.53 | $ 3,911.42 | $ 7,175.15 |

From the above, one can see that prior to the 2010 correction, the loan balance was too high because the loan interest rate was too high and the cash values were too high because too much interest was being credited to the borrowed cash value portion. Also, because the cash value was too high, this in turn caused the death benefits to be too high.

The corrections that the Company made to the policy's values directly resulted from our need to bring the policy back into compliance with its contractual terms. Enclosed is a specimen policy and we first call your attention to the "Loan Interest Rate" section on page 10. It provides that the Loan Interest Rate should not remain at 8% when the Declared Rate is less than or equal to 4%.

Similarly, the "Anniversary Cash Value Benefit Based on Borrowed Cash Value" section on page 11 provides in a high Declared Rate environment that the basic part of the borrowed Cash Value will receive an anniversary credit (of 3.5%) representing the difference between the 4.5% growth during the year and 8%. However, this 8% crediting continued into the low Declared Rate policy years until our 2010 correction.

Lastly, with respect to your request for an accounting history of the loan balance, we ask that you review the enclosed table, which illustrates the correct interest rates and loan balance amounts.

We hope the foregoing explanation proves helpful. If you have any questions, please contact our Customer Service Department at (800) 500-5512.

Respectfully,

*Kate Donovan*

Kate Donovan
Customer Relations

Enclosures:    Copy of your correspondence
               Table of loan history
               Specimen contract

cc:            Joel Burstein
               29 TZVI Lebovitch Street
               Jerusalem, Israel 96921

ELLI WEINSTEIN
505 Redleaf Road
Wynnewood, PA 19096

14 December 2011

Sun Life Financial
Life Products Department
Attn: Mr. Charles Hannah
P.O. Box 9133
Wellesley Hills, MA 02481

Re:   Policy №:   ███████9790
      Deceased:   Harold Burstein
      Claim №:   CL-214792

Dear Mr. Hannah,

I am writing in reply to your letter of 1 December 2011. The information stated in
that letter is not responsive to my inquiry and is completely inconsistent with the
policy and other documentation transmitted from Sun Life in the past.

When I called Sun Life, prompting your letter, I requested a complete accounting
from Sun Life for the above policy, not just two bits of loan information in isola-
tion. The numbers in yours of 1 December only relate that the original loan
amount was $9,000.00 on 10 August 1989 and that it was repaid on 21 December
2010 in the amount of $20,336.05. Instead of providing complete transparency of
the determination of both the loan value and the death benefit, as I requested,
your letter conceals the entire calculation.

Here's the problem. The November 18, 2011 check issued to me as my 50% share
of the death benefit was in the amount of only $14,530.57, purporting to reflect a
death benefit of $14,312.41 plus interest of $218.16. This amount is clearly incon-
sistent with Sun Life's report, dated September 13, 2010, showing the death bene-
fit to equal $54,681.72. In the same report, Sun Life reported that the loan balance
as of September 13, 2010 was $45,636.44. (A copy of Sun Life's "Keyplan Maxi
Anniversary Report" of that date is enclosed.)

In reliance upon these representations, my then 97 year old father authorized me
to pay, and I paid, $46,000.00 to Sun Life on 15 December 2010. (A copy of my
check № 2227 in that amount is also enclosed.) As a result of that payment, the

reported death benefit of $54,681.72 was no longer to be reduced by $46,000.00 of any outstanding loan. My father, my brother (Joel Burstein), and I all expected that this payment would free up the full death benefit Sun Life reported. Sun Life accepted my payment, and never disclosed to me that it took more money from me than it was entitled to receive.

*After* my father's death, when Sun Life first had a motive to minimize its obligation under the policy, Mr. Dan Jammal of Sun Life disclosed in his letter of 10 June 2011 that for many years—from 2001 through 2010— Sun Life had significantly overstated the amount of interest it was entitled to charge under the policy. He did not provide, however, any specifics. What is clear is that the false information from Sun Life over the years caused my repayment of the loan in the amount of $46,000.00, not the $20,336.05 stated in your letter of 1 December. Your letter fails to mention the actual amount of this payment, and fails to provide the complete accounting under the policy that I had requested. Even more outrageous, no one from Sun Life has ever disclosed to me that it has been holding my money without any right to do so for the past year!

Because my father and I relied upon Sun Life's repeated, wildly inflated values— culminating in the September 13, 2010 report that the death benefit was $54,681.72 and the loan balance was $45,636.44—Sun Life bound itself to the death benefit it promised when it kept my $46,000.00 payment in silence. Moreover, since Sun Life admits that the actual loan amount was only $20,336.05, I demand repayment to me of the $25,663.95 excess.

In sum, here's the minimum of what I believe is due my brother and me, the two beneficiaries under the policy. First, a complete accounting for how the $20,336.05 loan value was calculated. Second, assuming that calculation is correct, I request payments to my brother and me based on the following calculations:

| | |
|---|---|
| Death benefit as reported by Sun Life: | $54,681.72 |
| Less: payments to date: | -29,061.14 |
| Unpaid portion of death benefit: | $25,620.58 |
| One-half of unpaid portion of death benefit: | $12,810.29 |
| Payment toward the policy loan: | $46,000.00 |
| Less: actual loan as admitted by Sun Life: | -20,336.05 |
| My overpayment: | $25,663.95 |

Sun Life Financial
14 December 2011
Page 3

My brother is entitled to an additional payment of $12,810.29 (half of the unpaid
portion of the death benefit), and I am entitled to $38,474.24 (the other half of the
unpaid death benefit plus my overpayment of the loan), plus interest on each of
these amounts. In the case of the unpaid portion of the death benefit, interest
should run from the date of my father's death, 13 April 2011. In the case of the
overpayment of the loan balance, interest should run from the date you received
it, which was no later than 21 December 2010.

Although Mr. Jammal's letter stated that the overpayment will be made to my
father's estate, that amount is actually due to me. As the enclosed copy of my
check proves, I am the one that Sun Life, through its false statements, tricked into
paying far more than the company was owed. Since I paid it, and Sun Life will-
ingly accepted the payment from me, I am entitled to repayment of the admit-
tedly wrongfully retained excess money.

Very truly yours,

Encls.
cc:    Mr. Joel Burstein (w/encls.)

## KEYPLAN SPWL POLICY 979U - BURSTEIN

| Policy Year Beginning | Original Loan Interest Rate for Policy Year | Corrected Loan Interest Rate for Policy Year* | Corrected Loan Balance at Beginning of Policy Year | Corrected Loan Interest During the Policy Year | Corrected Loan Balance at End of Policy Year |
|---|---|---|---|---|---|
| 9/13/1993 | 8.00% | 4.00% | $12,334.16** | $493.36 | $12,827.52 |
| 9/13/1994 | 8.00% | 4.00% | $12,827.52 | $513.10 | $13,340.62 |
| 9/13/1995 | 8.00% | 3.85% | $13,340.62 | $513.61 | $13,854.23 |
| 9/13/1996 | 8.00% | 4.10% | $13,854.23 | $568.02 | $14,422.25 |
| 9/13/1997 | 8.00% | 3.75% | $14,422.25 | $540.83 | $14,963.08 |
| 9/13/1998 | 8.00% | 3.65% | $14,963.08 | $546.15 | $15,509.23 |
| 9/13/1999 | 8.00% | 3.65% | $15,509.23 | $566.09 | $16,075.31 |
| 9/13/2000 | 8.00% | 3.75% | $16,075.31 | $602.82 | $16,678.13 |
| 9/13/2001 | 8.00% | 3.00% | $16,678.13 | $500.34 | $17,178.47 |
| 9/13/2002 | 8.00% | 2.50% | $17,178.47 | $429.46 | $17,607.93 |
| 9/13/2003 | 8.00% | 2.00% | $17,607.93 | $352.16 | $17,960.08 |
| 9/13/2004 | 8.00% | 2.00% | $17,960.08 | $359.20 | $18,319.28 |
| 9/13/2005 | 8.00% | 2.00% | $18,319.28 | $366.39 | $18,685.66 |
| 9/13/2006 | 8.00% | 2.00% | $18,685.66 | $373.71 | $19,059.37 |
| 9/13/2007 | 8.00% | 2.00% | $19,059.37 | $381.19 | $19,440.55 |
| 9/13/2008 | 8.00% | 2.00% | $19,440.55 | $388.81 | $19,829.36 |
| 9/13/2009 | 8.00% | 2.00% | $19,829.36 | $396.59 | $20,225.94 |
| 9/13/2010 | 8.00% | 2.00% | $20,225.94 | $110.11*** | $20,336.05*** |

*This rate equals the Declared Rate for the Policy Year.

**This 1993 Loan Balance amount is the original loan balance amount rather than a corrected amount.

***As of the 12/21/2010 loan repayment date



# Keystone Provident Life Insurance Company
## A Stock Company

If the Insured dies while this policy is in force, we will pay the death benefit to the Beneficiary. Before we can pay the death benefit, we must have proof that the Insured died while this policy was in force. We will make such payment subject to the terms of this policy. This page is part of the whole policy.

You may return this policy within 90 days of the Date of Issue or 10 days after you receive it, whichever is later. It can be mailed or delivered to us or to the agent from whom you bought it. The returned policy will be treated as if we never issued it and we will promptly refund your premium, less any existing loans and loan interest due.

This policy is a legal contract between you and us.

## Read This Policy Carefully

Signed for the Company:

_Suzanne E. Lyons_
Secretary

_Robert S. Sharp_
President

## Paid-Up Whole Life Insurance
## Death Benefit Payable Upon the Insured's Death
## Single Premium as Shown on Page 3
## Nonparticipating—No Dividends

# Table of Contents

| | Page |
|---|---|
| Policy Specifications  . . . . . . . . . . . . . . | 3 |
| Table of Values  . . . . . . . . . . . . . . . . . . | 5 |
| Definitions  . . . . . . . . . . . . . . . . . . . . . | 7 |
|   Beneficiary  . . . . . . . . . . . . . . . . . . . . | 7 |
|   Date of Issue  . . . . . . . . . . . . . . . . . . | 7 |
|   Insured  . . . . . . . . . . . . . . . . . . . . . . | 7 |
|   Office  . . . . . . . . . . . . . . . . . . . . . . . | 7 |
|   Person  . . . . . . . . . . . . . . . . . . . . . . | 7 |
|   Policy Year, Policy Anniversary  . . . | 7 |
|   We, Us, Our  . . . . . . . . . . . . . . . . . . . | 7 |
|   Written Request  . . . . . . . . . . . . . . . | 7 |
|   You, Your  . . . . . . . . . . . . . . . . . . . . | 7 |
| General Provisions  . . . . . . . . . . . . . . . . | 7 |
|   Single Premium  . . . . . . . . . . . . . . . . | 7 |
|   Contract  . . . . . . . . . . . . . . . . . . . . . | 7 |
|   Modifications and Authority  . . . . . . | 8 |
|   Ownership  . . . . . . . . . . . . . . . . . . . . | 8 |
|   Change of Owner or Beneficiary  . . . | 8 |
|   Assignment  . . . . . . . . . . . . . . . . . . . | 8 |
|   Incontestability  . . . . . . . . . . . . . . . | 8 |
|   Non-Participation in Surplus  . . . . . | 8 |
|   Suicide Exclusion  . . . . . . . . . . . . . . | 8 |
|   Misstatement of Age  . . . . . . . . . . . . | 8 |
|   Policy Settlement  . . . . . . . . . . . . . . | 8 |
|   Discretionary Excess Interest  . . . . . | 8 |
|   Change of Plan  . . . . . . . . . . . . . . . . | 8 |
|   Annual Reporting  . . . . . . . . . . . . . . | 9 |
| Death Benefit  . . . . . . . . . . . . . . . . . . . | 9 |
|   Death Benefit Payable  . . . . . . . . . . | 9 |
|   Payment of Death Benefit  . . . . . . . . | 9 |

| | Page |
|---|---|
| Loans  . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
|   Policy Loans  . . . . . . . . . . . . . . . . . . | 10 |
|   Policy Loan Interest  . . . . . . . . . . . | 10 |
|   Loan Interest Rate  . . . . . . . . . . . . . | 10 |
|   Loan Repayment  . . . . . . . . . . . . . . | 10 |
| Anniversary Cash Value Benefit  . . . . | 10 |
|   Anniversary Cash Value Benefit | |
|     Based on Unborrowed Cash | |
|     Value  . . . . . . . . . . . . . . . . . . . . . . | 10 |
|   Anniversary Cash Value Benefit | |
|     Based on Borrowed Cash Value  . | 11 |
|   Anniversary Cash Value Benefit | |
|     Based on Single Premium  . . . . . . | 11 |
| Nonforfeiture Values  . . . . . . . . . . . . . . | 11 |
|   Cash Surrender  . . . . . . . . . . . . . . . | 11 |
|   Cash Value  . . . . . . . . . . . . . . . . . . . | 12 |
|   Basis of Calculation . . . . . . . . . . . . . | 12 |
| Payment Options  . . . . . . . . . . . . . . . . . | 12 |
|   Choice and Availability of Payment | |
|     Options  . . . . . . . . . . . . . . . . . . . . . | 12 |
|   Death of the Payee  . . . . . . . . . . . . . | 13 |
|   First Payment  . . . . . . . . . . . . . . . . . | 13 |
|   Option 1: Income for a Fixed Num- | |
|     ber of Years  . . . . . . . . . . . . . . . . . | 13 |
|   Option 2: Life Income with a Fixed | |
|     Number of Years Guaranteed  . . . | 13 |
|   Option 3: Interest Income  . . . . . . . . | 13 |
|   Option 4: Income of a Fixed | |
|     Amount  . . . . . . . . . . . . . . . . . . . . . | 13 |
| Tables  . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| Riders and Endorsements are After | |
|   Page  . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |

# Definitions

**Beneficiary**—The person who will receive any death benefit upon the death of the Insured. The Beneficiary will be: the primary beneficiary if alive on the date of death; otherwise the contingent beneficiary if alive on the date of death; otherwise you or your estate. If you designate more than one person as primary or contingent beneficiary and do not state otherwise, any non-survivors will not receive any benefit and the survivors will receive equal shares. The primary and contingent beneficiaries, if any, are named in the application. They may be changed as provided on Page 8.

**Date of Issue**—The date of receipt of the Single Premium at our Office. This date is shown on Page 3.

**Insured**—The person whose life is covered by this policy. This person is named on Page 3.

**Office**—Either our home office or our executive office. Our home office is in Providence, Rhode Island. Our executive office is shown on Page 3.

**Person**—A human being, a corporation, or any other legally recognized entity. The policy's text assumes that persons are always human beings. However, references that are inappropriate for non-human beings shall be construed in a consistent manner. For example, a reference to the death of a person shall include the dissolution of a corporation.

**Policy Year, Policy Anniversary**—The first policy year starts on the Date of Issue. Future policy years start on the same month and day in each subsequent year (known as the policy anniversary).

**We, Us, Our**—Keystone Provident Life Insurance Company.

**Written Request**—A request written on a form satisfactory to us and filed at our Office.

**You, Your**—The person(s) having all rights under this policy as owner. Initially, this is the primary owner. If the primary owner dies, the owner will be: any contingent owner then alive; otherwise, the primary owner's estate. If more than one person is designated as primary or contingent owner and the designation does not state otherwise, we will treat such persons as joint tenants with right of survivorship. The primary owner and any contingent owner are named in the application. Either may be changed as provided on Page 8.

# General Provisions

**Single Premium**—The Single Premium is due on the Date of Issue of this policy. It must be paid at our Office in United States currency. Coverage under this contract does not take effect until a contract has been issued and the premium paid during the Insured's lifetime. However, if a conditional receipt has been issued, coverage will be effective in accordance with such receipt. The amount of the Single Premium is shown on Page 3.

**Contract**—The entire contract is made up of:

(a) this policy;

(b) the application, a copy of which is attached to this policy; and

(c) all riders and endorsements which are attached to and made a part of this policy.

All statements made in the application, except for fraudulent ones, are representations, not warranties. We may use only those statements contained in the application to void the contract or deny a claim under it.

**Modifications and Authority**—Only our President or our Secretary may agree to:

(a) change this policy; or

(b) waive any of the terms of this policy.

We shall not be bound by any promise made by any other person. Any changes must be made in writing and with your consent, except as may be required by applicable law.

**Ownership**—While the Insured is alive, you may exercise all the rights of this policy. You do not need the consent of the Insured or any other person. If you die before the Insured, then your rights will pass:

(a) to any contingent owner then alive; otherwise

(b) to your estate.

**Change of Owner or Beneficiary**—While the Insured is alive, you may change by written request the primary owner, contingent owner, primary beneficiary, or contingent beneficiary. An irrevocably-named person may be changed only with the written consent of such person. After we record your request, the change will take effect as of the date you signed the request. The change will not affect any payments we make or actions we take before we record your request.

**Assignment**—You may assign this policy at any time while the Insured is alive. A copy of any assignment must be filed with us. We are not responsible for the validity of any assignment. If you assign this policy, your rights and those of any revocably-named person will be subject to the assignment. An assignment will not affect any payments we make or actions we take before we record it. Any assignment of this policy will be subject to any existing loans.

**Incontestability**—We will not contest this policy after it has been in force, during the Insured's lifetime, for two years from its Date of Issue.

**Non-Participation in Surplus**—We will not pay any dividends on this policy.

**Suicide Exclusion**—If the Insured commits suicide, while sane or insane, within two years from the Date of Issue, our death benefit payment will be limited to:

(a) the greater of the amount of the Single Premium or the Cash Value; less

(b) any existing loans ; less

(c) a pro rata portion of any loan interest due on the next policy anniversary.

**Misstatement of Age**—If the Insured's age has not been stated correctly, we will change any amount payable to what the premium paid would have bought at the right age.

**Policy Settlement**—All amounts payable under this policy are payable:

(a) at our Office; and

(b) in United States currency.

Any premium in default will be deducted from any amount payable.

**Discretionary Excess Interest**—On any policy anniversary we may credit excess interest to this policy. The amount and method of crediting excess interest will be at our discretion. Any excess interest would be in addition to any Anniversary Cash Value Benefit.

**Change of Plan**—This policy may be changed as to its amount of insurance, benefits, plan, or otherwise at any time that it is in force. You and we must mutually agree to any change. Any change will be made subject to:

(a) any state laws which apply;

(b) proof of insurability satisfactory to us; and

(c) payment of any charge or credit which we may determine.

We may from time to time offer you an alternative set of Policy Specifications and a new Table of Values. Any such offer will be:

(a) on the same basis for all insureds of the same classification whose policies have been in force for the same length of time; and

(b) without regard to any change in the Insured's health or occupation since the Date of Issue.

Any offer will state the period of time in which you may accept it. This policy will not change unless you notify us in time that you want the alternative option.

**Annual Reporting**—We will send you a statement on each policy anniversary that shows the current Guaranteed Death Benefit, Guaranteed Cash Value, Declared Rate for Unborrowed Cash Value, Loan Interest Rate, and loan balance.

Also, we will send you new Policy Specifications (Page 3) and a Table of Values (Page 5) on each policy anniversary. These new pages will show policy values based on the loan status of this policy on that date.

# Death Benefit

**Death Benefit Payable**—The Guaranteed Death Benefit is shown on Page 5 and is the same amount for all durations. This amount may change as a new Declared Rate for Unborrowed Cash Value becomes effective on each policy anniversary. If so, the new amount will be greater than the amount shown on the Page 5 in effect immediately before the anniversary. The level amount may also change if any policy loan activity occurs.

If the Insured dies while this policy is in force, we will pay a death benefit equal to:

(a) the Guaranteed Death Benefit; less

(b) any existing loans; less

(c) a pro rata portion of any loan interest due on the policy anniversary after the date of death.

**Payment of Death Benefit**—Before we pay the death benefit, we will require:

(a) proof of the death of the Insured; and

(b) the return of this policy.

Proof of death shall be:

(a) a certified death certificate;

(b) a certified decree of a court of competent jurisdiction as to the finding of death;

(c) a written statement by a medical doctor who attended the deceased; or

(d) any other proof satisfactory to us.

We will pay the death benefit to the Beneficiary. It will be paid in accordance with any applicable laws governing the payment of death proceeds.

# Loans

**Policy Loans**—We will grant you a loan on this policy if you properly assign it to us by a written request. You may borrow any amount less than or equal to:

    (a) the Cash Value on the next policy anniversary; less

    (b) any Anniversary Cash Value Benefit due on that same policy anniversary; less

    (c) any existing loans; less

    (d) any loan interest due on that same policy anniversary for any proposed loan and all existing loans.

We may defer granting a loan for up to six months unless the loan proceeds will be used to pay the premium due under a policy of yours that was issued by us. The six-month period begins on the date we receive your loan request at our Office.

**Policy Loan Interest**—Interest on any existing loan is due on each policy anniversary.

If you do not pay the interest when due we will add such interest to the loan balance.

The existing loans plus a pro rata portion of the loan interest due on the next policy anniversary may not at any time exceed the Cash Value. Should this occur, this policy will lapse. However, it will not lapse until 30 days after we send a notice to you at your last known address. We will also send a notice to any assignee of record.

**Loan Interest Rate**—The Loan Interest Rate is 8%. However, for any policy year for which the Declared Rate for Unborrowed Cash Value is less than or equal to 4%, the Loan Interest Rate for that year will be lower. It will be equal to or greater than the Declared Rate, but not more than 1.5% greater. The exact rate will be in your annual report.

**Loan Repayment**—If this policy is still in force, you may pay off in whole or in part any existing loans. In order to pay off all existing loans, you must also pay a pro rata portion of the loan interest due on the next policy anniversary.

# Anniversary Cash Value Benefit

We may credit an Anniversary Cash Value Benefit to this policy on any anniversary. This benefit will be equal to the sum of the following:

    (a) the Anniversary Cash Value Benefit Based on Unborrowed Cash Value;

    (b) the Anniversary Cash Value Benefit Based on Borrowed Cash Value; and

    (c) the Anniversary Cash Value Benefit Based on Single Premium.

**Anniversary Cash Value Benefit Based on Unborrowed Cash Value**—For any policy year for which the Declared Rate for Unborrowed Cash Value is less than or equal to 4%, this benefit will be zero. For any policy year for which the Declared Rate is greater than 4%, this benefit will be credited. The amount of

this benefit is related to both the amount of Cash Value you do not borrow and the length of time it is unborrowed. When this policy anniversary benefit is added to the amount by which unborrowed Cash Value grows during a policy year, unborrowed Cash Value grows between policy anniversaries at a rate equal to the Declared Rate for Unborrowed Cash Value for such policy year. The Declared Rate is shown on Page 3.

**Anniversary Cash Value Benefit Based on Borrowed Cash Value**—For any policy year for which the Declared Rate for Unborrowed Cash Value is less than or equal to 4%, this benefit will be zero. For any policy year for which the Declared Rate is greater than 4%, this benefit may be credited. To calculate this benefit, your borrowed Cash Value is divided into a basic part and an excess part. The basic part consists of that portion that does not exceed:

(a)  the Cash Value on the last policy anniversary; less

(b)  88% of the Single Premium.

The excess part is that portion of the borrowed Cash Value, if any, that exceeds the basic part. Both the basic and excess parts grow at 4.5%

during the year. When the anniversary benefit is added at the end of the year, the total rate of growth between anniversaries for each part is equal to the Basic Rate for Borrowed Cash Value and the Excess Rate for Borrowed Cash Value, respectively. If the Rate for either part is 4.5%, the anniversary benefit for that part will be zero and the total growth between anniversaries for that part will be 4.5%.

The current Basic and Excess Rates for Borrowed Cash Value are shown on Page 3. We may prospectively change the Rates on any anniversary to any amount between 4.5% and 8%. The Excess Rate will always be less than or equal to the Basic Rate. We may offer you the choice of retroactively changing one or both Rates during a policy year. If you accept our offer in writing, the new Rate(s) will apply to the entire policy year.

**Anniversary Cash Value Benefit Based on Single Premium**—This benefit is equal to a specified percentage of the Single Premium accumulated at the Declared Rates for Unborrowed Cash Value in effect since the Date of Issue. The specified percentage is shown on Page 3. If the percentage is zero, this benefit is zero.

# Nonforfeiture Values

**Cash Surrender**—You may surrender this policy for its Cash Surrender Value by making a written request and returning this policy. The Cash Surrender Value at any time is equal to:

(a)  the Cash Value; less

(b)  any existing loans; less

(c)  a pro rata portion of any loan interest due on the next policy anniversary.

During the first policy year after the 90th day, the Cash Surrender Value will be increased by a partial refund of the expense and mortality charges. The amount of the refund will equal:

(a)  8% of the Single Premium; less

(b)  1% of the Single Premium on the 91st day of the policy year, 4% of the Single Premium on the last day of the year (i.e., the day before the policy anniversary), and an interpolated amount on any other day.

The Cash Surrender Value may be:

    (a) taken in cash; or

    (b) left with us under one or more of the payment options as provided in the "Payment Options" section. Your choice of payment option must be made when you surrender this policy.

Surrendering this policy will cancel it. We may delay payment of the Cash Surrender Value for up to six months from the date we receive your request at our Office.

**Cash Value**—The Cash Value of this policy on each policy anniversary is shown on Page 5. The Cash Value at any time between policy anniversaries is equal to:

    (a) the Guaranteed Cash Value on the last policy anniversary; plus

    (b) a pro rata portion of (i) multiplied times(ii) where:

        (i) is the Guaranteed Cash Value on that same anniversary; and

        (ii) is the lesser of 4% or the Declared Rate for Unborrowed Cash Value.

During the first policy year, the Guaranteed Cash Value used in (a) and (b)(i) above equals 92% of the Single Premium. The rate defined in (b)(ii) above is the rate at which either unborrowed or borrowed Cash Value grows during a policy year.

The Cash Values shown on Page 5 may change as a new Declared Rate for Unborrowed Cash Value becomes effective on each policy anniversary. If so, the value shown for any duration on the new Page 5 will not be less than the value shown for the same duration on the Page 5 in effect immediately before the anniversary. The Cash Values shown on Page 5 may also change if any policy loan activity occurs.

**Basis of Calculation**— The mortality table and interest rate basis for calculating Cash Values is the Commissioners' 1958 Standard Ordinary Mortality Table at 4%. We have filed a detailed statement of the method of calculation of the Cash Values with the insurance supervisory official of the jurisdiction where this policy was delivered. All Cash Values are greater than or equal to the minimum cash values required by the jurisdiction where this policy was delivered.

# Payment Options

**Choice and Availability of Payment Options**—Any amount payable under this policy, of at least $5,000, may be received under a payment option. You may choose or change a payment option at any time while the Insured is alive.

If, when the Insured dies, you have not made a choice, a person receiving policy proceeds may then choose a payment option. Any choice or change must be made by a written request. After we record the choice or change, it will take effect as of the date the request was signed. The change will not affect any payments or actions we take before we record it.

The payment options are:

Option 1. Income for a fixed number of years;

Option 2. Life income with a fixed number of years guaranteed;

Option 3. Interest income; and

Option 4. Income of a fixed amount.

Other payment options may be arranged by mutual agreement.

The person who will receive the sum payable under a payment option will be called the payee. The payee shall turn in this policy to us. We will then give the payee a new contract for the payment option chosen.

Our consent is needed to choose an option if:

(a) the payee is not a human being; or

(b) this policy is assigned to anyone other than to us.

The smallest payment we will make under an option is $30. To the extent allowed by law, the amount held and the payments made by us shall not be subject to the claims of the payee's creditors.

**Death of the Payee**—When the payee dies, we will pay, in one sum, to the payee's estate:

(a) the balance of the amount payable still with us under Options 3 and 4; and

(b) the commuted value of any payments not yet made during the fixed period under Options 1 and 2. This value is based on

interest at a rate of 2.5% per year, compounded annually.

**First Payment**—We will make the first payment under Options 1, 2, and 4 as of the date the policy proceeds were payable.

**Option 1: Income for a Fixed Number of Years**—We will pay equal payments for a chosen number of years, not over 30. Each payment will be at least equal to the amount shown in Table 1.

**Option 2: Life Income with a Fixed Number of Years Guaranteed**—We will pay an income once each month for as long as the payee lives. Payments are guaranteed for at least the number of months chosen even if the payee dies before then. The amount of each payment will depend on the payee's sex and age before the payments start. Each payment will be at least equal to the amount shown in Table 2.

**Option 3: Interest Income**—We will pay interest on the amount left with us at a rate of at least 2.5% per year, compounded annually, for a chosen number of years, not over 30. We will make the interest payments annually, semiannually, quarterly or monthly, as chosen. We will make the first payment at the end of the first payment interval.

**Option 4: Income of a Fixed Amount**—We will make payments of a specified amount. We will credit interest on the balance of the amount payable left with us. This interest will be at a rate of at least 2.5% per year, compounded annually. Payments will last until the amount payable, plus interest, runs out.

**TABLE 1: MINIMUM PAYMENTS PAYABLE UNDER OPTION 1 FOR EACH $1000 LEFT WITH US**

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | | $503.09 | $252.32 | $84.28 | 6 | 177.12 | 89.11 | 44.69 | 14.93 | 15 | 78.80 | 39.64 | 19.88 | 6.64 |
| 2 | $506.17 | 254.85 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

**TABLE 2: MINIMUM MONTHLY PAYMENT PAYABLE UNDER OPTION 2 FOR EACH $1000 LEFT WITH US**

| Age Male | Female | 60 | 120 | 180 | 240 | Age Male | Female | 60 | 120 | 180 | 240 | Age Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12* | | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| 13 | | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| 14 | | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 | 85 | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | and over | and over | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

* Also applies to younger ages.

# Endorsements

To be inserted only by us



**Keystone Provident Life** Insurance Company

Providence, Rhode Island

**Paid-Up Whole Life Insurance
Death Benefit Payable Upon the Insured's Death
Single Premium as Shown on Page 3
Nonparticipating—No Dividends**

EXHIBIT G

ELLI WEINSTEIN
505 Redleaf Road
Wynnewood, PA  19096

4 April 2012

**By Fax: 1-781-304-5331**
Ms Kate Donovan
Customer Relations
Sun Life Financial
P.O. Box 9133
Wellesley Hills, MA  02481-9133

Re:   *Policy N*▮▮▮▮*9790*

Dear Ms Donovan:

I am writing for my brother, Joel Burstein, and myself in further response to your letter
of 25 January 2012.

Sun Life's calculation of the death benefit on the above policy is unfair and the letter is
deceptive. The death benefit was not "accurately calculated under the terms of the poli-
cy" as contended in the letter.

The policy says (p. 9) that pages 3 and 5 of the policy as issued on the last policy anni-
versary date before our father's death are the pages 3 and 5 that apply. The September
13, 2010 version of page 5 clearly says that the death benefit is $54,681.

The January 25 letter is also deceptive and unfair by referring to a "corrected" 2010 an-
niversary report when there was no such report. First of all, according to the definition
on page 7 of what the contract is, an anniversary report is not part of the contract, alt-
hough the new pages 3 and 5 distributed with it are. Second, Sun Life issued no "cor-
rected" 2010 report and no "corrected" pages 3 and 5. In fact, the company never ques-
tioned the values in the 2010 version of the policy pages until *after* my brother and I had
sent in our claims for the death benefit following our father's passing. Mr. Jammal's let-
ter of June 10, 2011 is written as though his letter is the very first time Sun Life is report-
ing on miscalculations regarding the policy.

Under these circumstances, our rights as consumers have been violated. Before we are
forced to take action to enforce our rights under Massachusetts' consumer protection

Sun Life Financial
4 April 2012
Page 2

law, we reiterate our demand for payment of the balance of the death benefit as stated in my letter of 14 December 2011, together with interest.

Very truly yours,

cc:    Mr. Joel Burstein