```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOEL BURSTEIN et al.          :      CIVIL ACTION
                              :
          v.                  :
                              :
SUN LIFE ASSURANCE COMPANY OF :
CANADA (U.S.)                 :      NO. 12-2494
```

                               MEMORANDUM

Bartle, J.                                              May 8, 2013

        Plaintiffs Joel Burstein and Elli Weinstein have instituted this putative class action against Sun Life Assurance Company of Canada ("Sun Life").  Plaintiffs are suing for breach of contract arising out of Sun Life's alleged failure to pay full death benefits to them as beneficiaries of a life insurance policy issued to plaintiffs' father, Harold Burstein, who died in April 2011.  Plaintiffs also claim a violation of the Massachusetts Consumer Protection Act, ALM GL ch. 93A, § 2.  Before the court is Sun Life's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

---

1. The plaintiffs allege subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The complaint avers that Weinstein is a citizen of Pennsylvania, Burstein is a citizen of Israel, and Sun Life is a citizen of Massachusetts and Delaware, with an amount in controversy in excess of $5,000,000, exclusive of interest and costs.  Based on discovery, there appears to be over 100 putative class members.  See 28 U.S.C. § 1332(d)(2)(A); 28 U.S.C. § 1332(d)(5)(b).  The court is deferring decision on class action certification pending its decision on defendant's motion for summary judgment against the individual plaintiffs.

I.

The undisputed facts are as follows. Harold Burstein was the insured under a Keystone Provident Life Insurance Company ("Keystone") life insurance policy, which he purchased in 1985 for a single premium of $10,000. Sun Life acquired Keystone in 2001, and is responsible for all of the obligations under the Policy to Harold Burstein and his beneficiaries.

According to the Policy, Sun Life sets various interest rates annually, that is a Declared Rate for Unborrowed Cash Value, Basic and Excess Rates for Borrowed Cash Value, and a Loan Interest Rate. The cash value of the Policy accumulates based on the amount of unborrowed cash, the Declared Rate for Unborrowed Cash Value, and the loan balance. If a policyholder takes a loan against the Policy, the policyholder pays interest at the Loan Interest Rate in effect at the time. Sun Life also credits interest to the policyholder on the loan balance at the appropriate Borrowed Cash Value Interest Rate during any year that the Declared Rate for Unborrowed Cash Value is greater than 4%. Under certain circumstances, a wash loan will be created when the Loan Interest Rate is offset by the Rates for Borrowed Cash Value. Sun Life additionally credits interest to the policyholder on the unborrowed cash value of the Policy during any year if the Declared Rate for Unborrowed Cash Value is greater than 4%. <u>Id</u>. Upon the death of the insured, the Policy pays a death benefit. The gross death benefit at any time equals the projected cash accumulation through the policy maturity date.

The net benefit payable to the beneficiaries under the Policy is the projected cash accumulation through policy maturity decreased by any outstanding loan.

The Policy provided that the Loan Interest Rate was 8.0% unless the Declared Rate for Unborrowed Cash Value dropped to or below 4%.  If that occurred, the Policy called for the Loan Interest Rate to decrease to a level equal to or "greater than the Declared Rate, but not more than 1.5% greater".  Each year, Keystone, and subsequent to 2001, Sun Life, sent Harold Burstein an Anniversary Report, which announced the Declared Interest Rate for Unborrowed Cash Value for that year.  The Reports also contained the insured's loan balance and net death benefit.  Along with the Anniversary Report, Sun Life also sent the insured an updated page 5 of the Policy stating the "Guaranteed Death Benefit."  The updated page 5 that was sent to the insured each year was intended to replace the original page 5 in the Policy.

Starting in 1993, it is undisputed that the Anniversary Reports and the updated page 5 of the Policy contained loan balance and gross death benefit amounts based on an inaccurate Loan Interest Rate.  The rate was higher than allowed under the Policy since it did not take into account the Declared Rate for Unborrowed Cash Value which had fallen to or below 4%.  Because of the interaction of the various interest rates, the report showed a larger death benefit and a larger loan balance than were correct under the Policy.  The inaccuracy was caused by a defect in Keystone's, and later Sun Life's, software system.  The system was incapable of adjusting the Loan Interest Rate below a certain

threshold. Having discovered the error, Sun Life in or about 2010 began the process of recalculating policy values to reflect the correct Declared Rate for Unborrowed Cash Value and Loan Interest Rate.

The September 13, 2010 Anniversary Report sent to Harold Burstein reflected a gross death benefit of $54,681 and a loan balance of $45,636.44. These numbers were wrong. In December 2010 the insured sent Sun Life a payment of $46,000 to be applied against his outstanding loan balance. Because interest due to Sun Life had accrued on the purported loan balance between September and December 2010, the insured, according to Sun Life, was left with a loan balance of $630 as of December 12, 2010.

Harold Burstein, as noted above, died on April 13, 2011. On June 10, 2011, Sun Life sent a letter to Elli Weinstein explaining the inaccuracy in the reported gross death benefit and loan balance. In October 2011, Ms. Weinstein and her brother, Joel Burstein, made a death benefit claim on the Policy. In November and December 2011 Sun Life issued payments to plaintiffs, as beneficiaries, totaling $28,842.98, the recalculated gross death benefit. Specifically, Weinstein was issued a check for $14,530.57 and Burstein was issued 2 checks totaling $14,312.41. On February 7, 2012, Sun Life also sent plaintiffs a payment of $26,627.53, which reflected the amount by which Harold Burstein had overpaid his loan balance, based on the inaccurate Loan Interest Rate. The payment included interest.

Plaintiffs accepted the refund as well as the death benefit payments. Thereafter, plaintiffs filed this lawsuit.

Plaintiffs maintain that Sun Life has failed to pay a net death benefit of $54,681 as stated in the September 2010 Anniversary Report. It is their position that they are entitled to the payment as a matter of contract and that Sun Life was not entitled to correct the figures in the Anniversary Report and pay them a reduced death benefit. Accordingly, plaintiffs are seeking the difference, with interest, between the reported death benefit of $54,681 and the reduced death benefit of $28,842.98 they received from Sun Life. They do not challenge the amount of the loan refund.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). When ruling on a motion for summary judgment, we may only rely on admissible evidence. See,

e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).

### III.

We turn first to plaintiffs' contractual claim, which all agree is governed by Pennsylvania law.  Plaintiffs do not contest that Sun Life may have used an incorrect Loan Interest Rate in making its calculations.  Plaintiffs simply maintain that these incorrect calculations became incorporated into the Policy and that Sun Life breached the insurance contract when it failed to pay the death benefit reported in the September 2010 Anniversary Report and the September 2010 page 5 of the Policy.  Sun Life counters that the death benefit and loan balance reported in the Anniversary Report and page 5 of the Policy that were sent to Harold Burstein in September 2010 contained mistaken calculations based on an inflated Loan Interest Rate and that the law allows it to correct its mistakes.  Since it asserts that it has paid the correct death benefit and refunded the loan overpayment with interest, it has complied with the terms of the Policy.

Plaintiffs rely on the Death Benefit Payable clause contained in the Policy, which provides:

> Death Benefit Payable- The Guaranteed Death Benefit is shown on Page 5 and is the same amount for all durations.  This amount may change as a new Declared Rate for Unborrowed Cash Value becomes effective on each policy anniversary.  If so, the new amount will be greater than the amount shown on Page 5 in effect immediately before the anniversary.  The level amount may also change if any policy loan activity occurs.

Plaintiffs maintain that the foregoing language prevents Sun Life from modifying the death benefit to reflect the accurate Loan Interest Rate.  We disagree.  The Policy simply provides that the Guaranteed Death Benefit will increase if a new Declared Rate for Unborrowed Cash Value becomes effective.  It is undisputed that the Declared Rate for Unborrowed Cash Value has not changed since 2003 and thus did not cause the death benefit to increase since that time.  Rather, the death benefit identified in the documents sent to Harold Burstein has simply been corrected to reflect the accurate Loan Interest Rate and loan balance.  Furthermore, plaintiffs' argument is incompatible with the very language of the Death Benefit Payable clause which states, in part, that the death benefit "may also change if any policy loan activity occurs."

Under Pennsylvania law, it is well established that a payor may recover payments made based on a unilateral mistake of fact, at least when no prejudice results to the payee.  Banks and insurers may invoke this legal principle.

In Foster v. Federal Reserve Bank of Philadelphia, 113 F.2d 326 (3d Cir. 1940), a depositor drew a check upon his bank payable to the order of plaintiffs.  Thereafter the depositor stopped payment on the check.  The depositor's bank, negligently failing to heed the directive, remitted the money through the Federal Reserve Bank.  The Court of Appeals ruled that the depositor's bank had the right to recover the money it had remitted erroneously to the plaintiffs' bank where the check had been deposited.  The court explained that a party has the right

to recover money paid under a unilateral mistake of fact even if the party making the mistake was negligent unless the recipient was prejudiced by the mistake or it would otherwise be inequitable to allow recovery.  Id. at 326-27.

In Nationwide Mutual Insurance Co. v. Glickman, 1996 WL 605129 (E.D. Pa. Oct. 22, 1996), the court was faced with an insurer who had made payments to an insured without full knowledge of the underlying facts.  The insured had sought medical treatment from uncertified and unqualified medical services providers who later billed the insurer for services rendered.  The court determined that the insurer would not have paid for the services if it had known that the services were provided by unqualified personnel.  As such, the payments were made based on a mistake of fact and the insurer could recover those payments from the insured because a contrary result would constitute unjust enrichment.  Id. at *4.

In another case, Home for Crippled Children v. Prudential Insurance Co. of America, 590 F. Supp. 1490, 1506 (W.D. Pa. 1984), defendant insurer mistakenly reimbursed a healthcare provider for services rendered to the insured's child that were not covered by the policy in question.  The court, noting the decision in Foster, concluded that the insurer was entitled to recover the excess payment it made to the insured.  The court reasoned that the payment was made under a mistake of fact and without full knowledge of the timing of the medical treatment.

Here, the numbers contained in the 2010 Anniversary Report and the new page 5 of the Policy were wrong. Although Sun Life may have been negligent as well as slow in correcting the mistakes, it caught them before it paid out any life insurance proceeds to plaintiffs. Surely if a party may recover money it paid by mistake, it may not be required to pay a mistaken amount if it discovers the mistake before the payment is made. Taking plaintiffs' argument to its logical conclusion, they would be entitled to a death benefit of $54,000,000 rather than approximately $54,000, should the documents Harold Burstein had received from Sun Life prior to his death have mistakenly contained that eight-figure number. The law does not sanction such an absurd result. Plaintiffs have not come forth with any evidence that they relied, to their detriment, on the higher amount listed on the Anniversary Report and the updated page 5 of the Policy sent to Harold Burstein in 2010. Plaintiffs are simply not entitled to a windfall based on Sun Life's mistake.

### IV.

We turn next to plaintiff's argument under the Massachusetts Consumer Protection Act, ALM GL ch. 93A, § 2 ("Massachusetts Act"). Plaintiffs maintain that Sun Life violated the Massachusetts Act by engaging in unfair or deceptive conduct when it inflated loan balances for nearly two decades and failed to honor the guaranteed death benefits it had "knowingly and intentionally calculated [and] reported to policyholders." Sun Life responds that under Pennsylvania choice of law principles, plaintiffs cannot assert a violation of the

Massachusetts Act against Sun Life, and that even if such an action were properly before the court, plaintiffs have not come forward with any evidence that Sun Life violated the Act.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

> Section 2 of the Massachusetts Act provides:
>
> Unfair Methods of Competition or Deceptive Acts or Practices.
>
> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
>
> (b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.
>
> (c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter.  Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended.

ALM GL ch. 93A, § 2.

> Section 9 of the Act provides a private cause of action for persons injured by the illegal conduct described in § 2:
>
> > (1) Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of

>           chapter one hundred and seventy-six D may
>           bring an action in the superior court, or in
>           the housing court as provided in section
>           three of chapter one hundred and eighty-five
>           C whether by way of original complaint,
>           counterclaim, cross-claim or third party
>           action, for damages and such equitable
>           relief, including an injunction, as the court
>           deems to be necessary and proper.

ALM GL ch. 93A, § 9. The Massachusetts Act authorizes a court to award double or treble damages and attorney's fees if it is found that the defendant willfully and knowingly violated the statute by employing an unfair or deceptive business practice. Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998). A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted. Id. However, a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a ch. 93A claim is made. Id. The undisputed evidence here shows nothing more.

      Plaintiffs point to Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806 (Mass. 1991) for the proposition that a mere breach of contract can support liability under the Massachusetts Act. However, subsequent cases have demonstrated that unless the conduct is accompanied by an "extortionate quality that gives it the rancid flavor of unfairness," 93A does not provide a right of action. See, e.g., Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992); Zurich Am. Ins. Co. v. Watts Regulator Co., 796 F. Supp. 2d 240, 244 (D. Mass. 2011).

      Plaintiffs also assert that Sun Life committed a per se violation of the Massachusetts Act when it violated ALM GL ch.

176D § 3(5), which states that it is an unfair or deceptive act or practice for an insurance company to "knowingly make[e] any false entry of a material fact in any book, report or statement" or to "knowingly omit[] to make a true entry of any material fact pertaining to the business of such person in any book, report or statement." Although Chapter 176D creates no private right of action, consumers injured by insurance practices proscribed under Chapter 176D may sue under Chapter 93A. Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 839 (1st Cir. 1990). A negligent act, standing alone, will not support Chapter 176D liability. Glickman v. Brown, 486 N.E.2d 737, 741 (Mass. App. Ct. 1985); see also Meyer v. Wagner, 709 N.E.2d 784, 793 ( Mass. 1999). Thus, "although it is possible to recover in insurance cases for a deceptive act that is the result of a defendant's negligence, courts have required plaintiffs to show that the defendant deliberately misrepresented the extent of insurance coverage, or otherwise acted in bad faith or with an improper motive, in order to establish a violation of Chapter 176D." Aquino v. Pacesetter Adjustment Co., 416 F. Supp. 2d 181, 192 (D. Mass. 2005). Again, no such evidence exists here.

   Plaintiffs have failed to come forth with any evidence that Sun Life possessed the requisite intent to deceive plaintiffs or Harold Burstein when it issued the flawed Anniversary Report and updated page 5 of the Policy. Indeed, given the nature of the Policy, Sun Life in no way benefitted from the miscalculated loan balance and death benefit. In sum, there is no evidence from which a finder of fact could find that

Sun Life acted in bad faith or engaged in an unfair or deceptive business practice. To the contrary, this case involves "an ordinary contract dispute" which at most demonstrates negligence on the part of Sun Life. Thus, we need not engage in a conflict of laws analysis. Plaintiffs have simply not produced any evidence that Sun Life has violated the Massachusetts Act.